## Crawford, Appellant, v. Southern Fulton School District.

Argued May 22, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John B. Schaner,* for appellant.

*John McD. Sharpe, Jr.,* for appellee.

OPINION BY MR. JUSTICE JONES, October 3, 1968:

Stanley Crawford (appellant), a farmer by occupation, lives within the boundaries of Southern Fulton School District (District) in Fulton County. The District, a fourth-class school district, levied for 1965-1966 an occupation tax on appellant and all other farmers within the boundaries of the school district. The District claims to derive its authority for the tax from the so-called "Tax Anything Act" (Act of June 25, 1947, P. L. 1145, §1, as amended, 53 P.S. §6851: "A. The duly constituted authorities of . . . school districts of the fourth class may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine to be paid . . . on *persons, transactions, occupations, privileges, subjects and personal property* with the limits of such political subdivisions . . . . (emphasis added)." This general grant of power is followed by several exceptions. Appellant maintains that the fourth exception exempts farmers from occupation taxes: "Except that such local authorities shall not have authority by virtue of this act . . . (4) to

levy, assess and collect a tax on goods and articles manufactured in such political subdivision or on the by-products of manufacture, or on minerals, timber, natural resources and farm products produced in such political subdivision or on the preparation or processing thereof for use or market, *or on any privilege, act or transaction related to the business of* manufacturing, *the production, preparation or processing* of minerals, timber and natural resources, *of farm products,* by manufacturers, by producers and *by farmers with respect to the* goods, articles and *products of their own manufacture, production or growth,* or on any privilege, act or transaction relating to the business of processing by-products of manufacture, or on the transportation, loading, unloading or dumping or storage of such goods, articles, products or by-products." (Emphasis added).

The "Tax Anything Act" was repealed as of January 1, 1966. The portions quoted above, however, were included in "The Local Tax Enabling Act" (Act of December 31, 1965, P. L. 1257, §2, 53 P.S. §6902). In addition, the legislature included the following provision at the end of the fourth exception: ". . . except that local authorities may levy, assess and collect taxes on the occupation, occupational privilege, per capita and earned income or net profits of natural persons engaged in the above activities . . . ." There is no question that appellant would be subject to an occupation tax under the new act.

Both parties have argued that this additional provision is a guide to the correct interpretation of the fourth exception to the "Tax Anything Act." Appellant claims that, since the new act added a provision to permit occupation taxes, such taxes were not legal under the old act. The District counters that the additional language was added to clarify the misinter-

pretation placed upon the old act by courts which held that occupation and income taxes were not permitted under the fourth exception. Either interpretation is logical and could be correct. Since we do not know the legislative intent in adding the new language, it would be hazardous at best to try to interpret the fourth exception from language added 18 years later.

Four common pleas courts have considered the question whether the "Tax Anything Act" permits the local taxing authority to levy an occupation tax on farmers. The first three decisions to come down held in favor of the farmer: *Miller v. York Imperial School Dist.*, 23 Pa. D. & C. 2d 406 (York C.P. 1960); *Brandt v. Conewago Twp. School Dist.*, 34 Pa. D. & C. 2d 146 (Dauphin C.P. 1964); *Yoder v. Union Twp. School Dist.*, 37 Pa. D. & C. 2d 315 (Mifflin C.P. 1965). The fourth court, from which the present appeal is taken, decided in favor of the school district: *Crawford v. Southern Fulton School Dist.*, 8 Adams L.J. 177 (1967). There are no appellate court cases dealing with this question.

The crucial words in the statute have been italicized in the sections quoted above. The District points out that the work "occupation" has been included in the general grant of power but has been omitted in the fourth exception. It, therefore, maintains that occupation taxes are not exempted under the fourth exception. Appellant counters by indicating that a new word "act" has been included in the fourth exception and he argues that the legislature used "occupation" and "act" to convey the same concept. In drafting legislation, precision in language is a prerequisite and in statutes, perhaps more so than in any other type of writing, words acquire specific meanings. It is difficult for us to accept the argument that the legislature

used the word "occupation" in the general grant of taxing authority and then used the word "act" in the fourth exception to convey the same concept.[1]

The three common pleas courts which decided in favor of the farmer concluded that the word "occupation" was impliedly included within the words "privilege, act or transaction": "It cannot be questioned that an occupation tax is a tax on the privilege of engaging in the particular occupation taxed. Neither can it be questioned that the privilege of engaging in the occupation of farming is the sum total of all the privileges related to the production, preparation or processing of farm products by farmers, with respect to the products of their own production or growth." *Brandt v. Conewago Twp. School District,* 34 Pa. D. & C. 2d 146, 151 (1964). This interpretation places a strain on the word "privilege", which was included in both the general grant of power and in the fourth exception. Under the court's interpretation in *Brandt,* the word must mean more in the fourth exception than it does in the general grant since it now includes the concept of "occupation" which was not repeated in the

---

[1] A similar argument was made in *Fischer v. Pittsburgh,* 178 Pa. Superior Ct. 16, aff'd, 383 Pa. 138 (1955). The taxing authority pointed out that the fourth exception does not explicitly prohibit income taxes. The authority then argued that since the word "income" does appear in other sections of the act, the legislature would have included the word in the fourth exception had it intended to prohibit income taxes on manufacturers. The court responded: "There might be some validity to this argument had the legislature specifically authorized an income tax by name in that part of the section which authorized the imposition of the tax. But it did not. It authorized a tax on 'persons, actions, occupations, privileges, subjects and personal property', without reference to income." *Fischer,* supra, at 25. In our case, the word in question is "occupation". In the general grant of authority, the legislature did authorize occupation taxes. Therefore, we must conclude that the omission of the word from the fourth exception is significant.

fourth exception. The three earlier cases also fail to explain why the legislature did not merely repeat the word "occupation" if it intended to ban occupation taxes. Furthermore, if the words "privilege, act or transaction" carry the broad interpretation these courts suggest, why did the legislature not merely say that the local taxing authority could not tax farmers and manufacturers instead of constructing a detailed exception to the general grant?

In statutory construction cases it is easy to fall into a morass attempting to define one word in isolation. Instead of focusing on the words "Occupation", "privilege", and "act", it would be more beneficial to look at the structure of the entire fourth exception. The fourth exception is divided into five parts. The first section forbids taxes on manufactured articles, natural resources and farm products. The second forbids taxes on the processing and preparation of those items. The fourth forbids taxes on any "privilege, act or transaction", involved in the production of by-products of manufacture. The fifth forbids taxes on the transportation and storage of those items. The third section, which is the section in question, forbids taxes on "any privilege, act or transaction related to . . . the production, preparation or processing . . . of farm products . . . by farmers with respect to the . . . products of their own manufacture, production or growth . . . ."

First, if the words "privilege" and "act" are such all-inclusive words, why are they mentioned only in the third and fourth sections of the exception? If these words are so all-inclusive, why was it necessary to include the first, second and fifth sections? These words are repeated in the third and fourth sections. These two sections deal with different subjects. Therefore, the meaning these words have in either section

is limited to the particular area with which each of these two sections deals.

Second, what subjects do the five sections cover? The first forbids taxes on completed products, the second processing taxes, the fourth processing taxes on by-products of manufacture, the fifth storage taxes. The controversial third section, when read in the context of the other sections, is an extension of the second section. It prohibits the taxing authority from taxing the farmer on any "privilege, act or transaction" concerning the production, preparation and processing of items when the farmer himself does the work. An example would be a tax on the privilege of processing one's own milk. When read in the context of the other four sections, this third exception does not convey the expansive meaning the appellant argues.

Third, the first, second, fourth and fifth sections indicate that the legislature was concerned about taxes on *goods* and *articles* in their various stages of production and sale. When read in context, the third section should be given the same interpretation. The third section prohibits a tax on any "privilege, act or transaction" involving production, preparation and processing by the farmer himself, which tax will necessarily be included in the cost of the completed product. For instance, if there is a tax of one cent per gallon for the privilege of processing milk, the farmer will be forced to include this one cent in the cost of each gallon he sells.

When read in this light, the legislative intent in adding this fourth exception becomes more obvious. The legislature was attempting to make Pennsylvania manufactured and farm products more competitive in the open market by prohibiting all taxes which would be included directly in the cost of the product. See:

*Atlantic Refining Co. Case,* 398 Pa. 30, 35, 156 A. 2d 855 (1959). Nowhere is there stated a purpose to protect farmers from *all* taxes. Surely the legislature was aware that some townships in the state are inhabited predominantly by farmers and that to protect farmers from all taxes would seriously impair the ability of such townships to raise revenues for schools.

As mentioned above, there are no appellate court cases dealing with the farmer provisions of the fourth exception. There are, however, several cases dealing with the manufacturing provisions. Since farmers and manufacturers are included within the same exceptions, the manufacturing cases help to shed some light on the farmer issue.[2] The three common pleas courts which decided in favor of the farmer relied on manufacturing precedents.

The first of the three cases, *Miller v. York Imperial School District,* relied on *Isaly Dairy Co. v. Pittsburgh,* 379 Pa. 108, 108 A. 2d 728 (1954). In *Isaly,* this Court struck down a mercantile tax on retail dealers for all sales made in a location other than the place of manufacture. The language of the act would seem to require this result. The *Miller* court then goes on to say, however: "If a tax on only the sale of manufactured products is invalid as a tax on a privilege, act or transaction related to manufacturing, it seems obvious that a tax on the entire occupation of farming is in reality a tax on every privilege, act or transac-

---

[2] The manufacturing provision appears to be somewhat broader in scope than the farmer provision. The fourth exception prohibits taxes on any privilege, act or transaction related to the *business* of manufacturing. The exception then prohibits taxes on any privilege, act or transaction related to the *production, preparation and processing* of farm products. Arguably, certain taxes (such as income or gross receipts taxes) could affect the *business* of manufacturing or farming but not affect the *production, preparation and processing* of products.

tion related to the production, preparation, or processing of farm products by farmers." *Miller,* supra, at 424. As indicated above, this interpretation is not so "obvious". A sales tax affects the "business of manufacturing"; it is not so clear that an occupation tax affects the "production, preparation or processing" of goods.

The second of the common pleas cases is *Brandt v. Conewago Twp. School Dist. Brandt* also relied on three manufacturing cases, one of which was *Isaly.* The other two were *Fischer v. Pittsburgh,* 383 Pa. 138, 118 A. 2d 157 (1955) and *H. J. Heinz Co. v. Pittsburgh,* 170 Pa. Superior Ct. 435, 87 A. 2d 96 (1952). In *Fischer,* this Court struck down a tax on the profits earned from the business of a partnership. Starting from the proposition that sales taxes are not permitted under the act, this Court continued, "The sale of the manufactured articles being, therefore, a privilege, act or transaction related to the business of manufacturing, it is equally a privilege related to the business of manufacturing to obtain profits therefrom". *Fischer,* supra, at 143. In *Heinz,* the Superior Court struck down a mercantile license tax based on the dealer's annual gross business. "It apparently is a part of the policy of the Legislature of Pennsylvania in fostering industry to reserve to itself the taxation of manufacturing in all of its phases. The 1949 amendment in prohibiting the taxation of '*any* privilege, act or transaction *related* to the business of manufacturing' is a manifestation of that policy." *Heinz,* supra, at 440. Like *Isaly,* these two cases dealt with taxes directly affecting the "business of manufacturing". The cases are agreed that taxes levied at any stage of production are not permitted by the act. An occupation tax on farmers, however, has no direct bearing on the production, preparation and processing of farm products.

Taxes based on sales volume or net profits, however, do have a direct effect on the cost of each product. It is this direct effect which the legislature was attempting to prevent.

The third common pleas case, *Yoder v. Union Twp. School Dist.*, does not cite any of the manufacturing cases. The court states, "Let us then examine the occupation of a farmer. What else conceivably does it consist of but privileges, acts or transactions related to the production, preparation, or processing of farm products and the transportation thereof?" *Yoder*, supra, at 317. As indicated above, this interpretation places a strain on the language used by the legislature and fails to consider the use of the words "privilege, act or transaction" in context with the other sections of the fourth exception.

The cases relied upon by the three common pleas decisions upholding the position of the farmer, therefore, do not directly support their holdings. There is, however, a manufacturing case involving an occupation tax. See: *City of Bradford v. Pecora*, 39 Pa. D. & C. 2d 78 (McKean C.P. 1966). The tax in question required the employer to collect $10 per annum from each employee. While citing both *Isaly* and *Fischer*, the court said, "The court recognizes the restrictions upon a municipality taxing manufacturers on sales, profits or the products manufactured, but we find no legal restrictions as to the imposition of an occupation tax on those workers employed in manufacturing plants." *Pecora*, supra, at 83. The language of the fourth exception seems to indicate that this is the distinction the legislature intended to make.

Occupation taxes are not new. This Court has long recognized the distinction between occupation and income taxes: "An 'occupation' tax is peculiar in its character. It is not a tax upon property, but upon

the pursuit which a man follows in order to acquire property and support his family. It is a tax upon income in the sense only that every other tax is a tax upon income; that is to say, it reduces a man's clear income by the precise amount of the tax. But it is an income tax in no sense." *Banger's Appeal,* 109 Pa. 79, 95 (1885). *Phillips v. Barnhart,* 27 Pa. Superior Ct. 26 (1904). Just as there is a distinction between occupation and income taxes there is a distinction between occupation and privilege taxes.[3] An occupation tax must be identical for all members of a particular occupation (*Banger's Appeal,* supra, at 94) whereas a privilege tax is based on some other criterion such as net income or volume of sales. The manufacturing cases cited above indicate that the "Tax Anything Act" prohibits privilege taxes. These cases do not hold, and the "Tax Anything Act" does not state, that the local taxing authority may not levy an occupation tax on farmers.

Order affirmed.

---

[3] In adding the exception to the fourth exception in "The Local Tax Enabling Act", the legislature gave the local taxing authority the right to levy both an occupation and an occupational privilege tax on farmers. Act of December 31, 1965, P. L. 1257, §2, 53 P.S. 6902.