623 A.2d 401

**METALTECH, Appellant,**

v.

**CITY OF PITTSBURGH, The School District of Pittsburgh, and Reginald B. Young, Treasurer of the City and School District of Pittsburgh.**

Commonwealth Court of Pennsylvania.

Argued Oct. 19, 1992.

Decided March 11, 1993.

Reargument Denied April 27, 1993.

172

Stanley Yorsz, for appellant.

Ronald H. Pferdehirt, Asst. City Solicitor, for appellee, City of Pittsburgh.

Veleter M.B. Mazyck, for appellee School Dist. of Pittsburgh.

Before PALLADINO and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Metaltech appeals from an order of the Court of Common Pleas of Allegheny County that affirmed the decision of Reginald B. Young, Treasurer of the City of Pittsburgh and the School District of Pittsburgh (Treasurer), that upheld mercantile and business privilege tax assessments imposed against Metaltech pursuant to The Local Tax Enabling Act[1] (Act). We affirm.

On January 16, 1984, Metaltech commenced operation of a steel annealing and galvanizing facility within the City of Pittsburgh.[2] Metaltech purchases from integrated steel producers rolls of steel which are uncoated "full-hard" steel coils.[3] The steel is uncoiled and cleaned, and is then passed through a furnace[4] and molten zinc pot. The heat treatment portion of the procedure, annealing, makes the steel more malleable. After the steel is galvanized by being drawn through the molten zinc pot, it is coated with a chemical surface treatment designed to prevent oxidation and is then recoiled.

On May 22, 1984, Metaltech filed with the Treasurer a registration form which described the nature of its business as "Metal Processing (Galvanize)." Following an audit of Metaltech's business records, the Treasurer issued a notice of assessment, dated December 10, 1985, advising Metaltech that a deficiency assessment totaling $5,288.43 had been made against it for mercantile and business privilege taxes for the years 1984 and 1985. By letter dated December 17, 1985,

1. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6930.13.

   The School District of Pittsburgh's authority to impose mercantile license taxes is set forth in the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702 and 24 P.S. § 582.4.

2. Jones and Laughlin Steel Corporation had previously owned and operated the facility in question.

3. "Full-hard" steel has been cold reduced and has an extremely hard surface that is brittle.

4. The furnace contains an atmosphere of hydrogen and nitrogen. The furnace temperature is between 1,500 and 1,600 degrees Fahrenheit with the steel itself being heated to approximately 1,300 to 1,350 degrees Fahrenheit.

Metaltech forwarded to the Treasurer a check in the amount of $6,304.77 as payment for the deficiency assessment, related interest, and penalties accrued through December 31, 1985. The letter noted that such payment was being made under protest and that Metaltech would pursue a Treasurer's hearing concerning the matter.

On January 10, 1986, Metaltech requested that the Treasurer conduct an administrative hearing to review its claim for refund of all of the aforementioned taxes together with applicable interest and penalties. A hearing was held before Examining Officer Henry Wilson, an assistant tax administrator, on March 6, 1986. Metaltech was represented by counsel at the hearing and Wilson Farmerie, Metaltech's plant manager, and Thomas Grudovich, Metaltech's assistant chairman, both appeared and testified on Metaltech's behalf. At the hearing, Metaltech claimed that it was entitled to the exemption under Section 6902(4) of the Act, 53 P.S. § 6902(4) because it was a manufacturer of galvanized steel products and, alternatively, because it engaged in processing.[5]

5. Section 6902 provides that local authorities shall not have authority by virtue of this Act:

> (4) To levy, assess and collect a tax on goods and articles *manufactured in such political subdivision or on the by-products of manufacture*, or on minerals, timber, natural resources and farm products produced in such political subdivision or on the preparation or processing thereof for use or market, or on any privilege, act or transaction related to the business of manufacturing, the production, preparation or processing of minerals, timber and natural resources, or farm products, by manufacturers, by producers and by farmers with respect to the goods, articles and products of their own manufacture, production or growth, or on any privilege, act or transaction relating to the business of *processing by-products of manufacture*, or on the transportation, loading, unloading or dumping or storage of such goods, articles, products or by-products; except that local authorities may levy, assess and collect taxes on the occupation, occupational privilege, per capita and earned income or net profits of natural persons engaged in the above activities whether doing business as individual proprietorship or as members of partnerships or other associations; ...

53 P.S. § 6902(4). (Emphasis added.)
*See also* 24 P.S. § 582.1(4) which by definition excludes from mercantile license tax one who sells his own manufactures.

By adjudication letter dated August 21, 1987, the Treasurer sustained the position of the Examining Officer. In support of his decision, the Treasurer relied on the Allegheny County Court of Common Pleas opinion in *City of Pittsburgh v. Hanlon–Gregory Galvanizing Company*, (No. 3132 July Term 1974, filed February 15, 1977) [6] when he concluded that Metaltech was not entitled to the manufacturer's exemption because Metaltech's metal galvanizing process does not result in a new and different product and that the change merely involves a metal coating.

On September 10, 1987, Metaltech filed an appeal to the Court of Common Pleas of Allegheny County from the decision of the Treasurer. Metaltech contended that the Treasurer's decision improperly interpreted the provisions of the Act. Metaltech argued that it was entitled to an exemption under Section 6902(4) of the Act because galvanizing of steel is processing for purposes of Section 7601(a) of the Tax Reform Code of 1971, 72 P.S. § 7601(a), commonly known as the Pennsylvania Capital Stock Tax Act. Metaltech also argued that as a result of its operations, the steel undergoes substantial changes that affect its form, qualities and adaptability of use in that the annealing process alters both the metallurgical and chemical characteristics of the steel.

On March 24, 1992, the trial court issued an opinion and order that affirmed the decision of the Treasurer which had denied Metaltech's claim for an exemption. The trial court noted that the term "manufacturing" is not defined in the Act and therefore deferred to the definition set forth by the Supreme Court in *Bindex Corporation v. City of Pitts-*

6. The *Hanlon–Gregory* opinion, which was written by then Court of Common Pleas Judge Silvestri Silvestri, held that "[g]alvanizing the steel is for protection against corrosion and is merely a superficial covering of the steel without any substantial and well signalized transformation in form, qualities and adaptability in the use of the steel." The trial court concluded that Hanlon's process and activity in galvanizing steel of its customers does not result in a new and different product and thus is not engaged in manufacturing goods and articles.

*burgh,* 504 Pa. 584, 475 A.2d 1320 (1984).[7]   Although the trial court found that the annealing process alters the steel's chemical composition so that it is more malleable, the trial court concluded that despite the fact that the steel's chemical properties are altered somewhat, the fact remains that the essential properties of steel are not changed during the process. The trial court further concluded that the test for manufacturing does not revolve around whether or not the chemical properties of the steel are altered.   The trial court determined that the test is whether or not a new product with a different identity emerges as the product of labor and skill.   The trial court then held that the change in the steel during Metaltech's operations is superficial and not substantial, a new and different product does not emerge from the process, and the product does not acquire a new identity.   The trial court did not address Metaltech's argument concerning processing. Metaltech filed this appeal.[8]

Metaltech contends that there are two separate and independent reasons why the Treasurer does not have the power

7.  In *Bindex,* the Supreme Court explained what is meant by "manufacturing" as follows:

As is evident, the concept underlying the definition is the transformation of material or things into something different from that received.  The difference cannot be a superficial change that does not alter or change the thing.  For example, a cosmetic change performed merely to facilitate the ease of handling, storing, packing or shipping the product or material does not constitute manufacturing. What is required is that the basic materials or goods be given a new identity by the current producer, one which can be easily traced to such producer.  This identity must be the product of skill and labor. Skill involves education, learning, experience or knowledge one acquires in a particular business, trade or profession;  while labor is the physical characteristics and methods utilized to employ one's skills. When labor is used in conjunction with skill to produce a different product than the original, one with a new identity, manufacturing has occurred.  (Footnote omitted.)
504 Pa. at 587–88, 475 A.2d at 1322.

8.  Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law or whether its decision was unsupported by substantial evidence. *Westinghouse Electric Corporation (R & D Center) v. Board of Property Assessments, Appeals and Review,* 138 Pa.Commonwealth Ct. 30, 587 A.2d 820, *appeal allowed,* 528 Pa. 182, 595 A.2d 1145 (1991).

under the Act to tax its manufacturing process. We will address both of Metaltech's contentions in the order in which they are raised.[9]

## MANUFACTURING

■ Metaltech first contends that its annealing and galvanizing operation [10] substantially transforms raw steel into finished steel with a new and different form and quality created for new and different uses and as such constitutes a manufacturing activity for purposes of the manufacturing exemption set forth in Section 6902(4) of the Act. The Treasurer argues on appeal that the record clearly demonstrates that Metaltech has not proven that it produces a new and different product since its process both begins and ends with the same rolls of

9. The Treasurer and the trial court referred to the limitation imposed on the municipality's ability to tax by Section 6902(4) of the Act as an "exemption." Now, for the first time on appeal, Metaltech maintains that the aforementioned restriction is an "exclusion" rather than an "exemption" citing *Harsco Corporation v. City of Pittsburgh*, 516 Pa. 562, 533 A.2d 1012 (1987). Metaltech argues that:

> The distinction between a tax exemption and a tax exclusion is *not* merely rhetorical. Exemptions are items which are within the scope of the general language of the statute imposing the tax, *Commonwealth v. Sitkins Junk Co.*, 412 Pa. 132, 141–42, 194 A.2d 199, 204 (1963), whereas "exclusions are items which were not intended to be taxed in the first place." *Rossi v. Commonwealth*, 20 Pa.Commw. 517, 522, 342 A.2d 119, 122 (1975). The legal consequence of this distinction is that exemptions are strictly construed against the taxpayer, and exclusions are strictly construed against the taxing body. *Equitable Gas Co. v. Commonwealth*, 18 Pa.Commw. 418, 422, 335 A.2d 892, 894 (1975). *See also Beckwith Machinery Co. v. Commonwealth*, 35 Pa.Commw. 138, 142, 385 A.2d 605, 607 (1978).

However, pursuant to Pa.R.A.P. 302(a), issues not raised in the lower court are waived and cannot be raised for the first time on appeal. *See Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985).

10. The Treasurer relied on *Hanlon–Gregory* in denying Metaltech a manufacturing tax exemption. Metaltech contends that *Hanlon–Gregory* is not completely dispositive of the present case because the *Hanlon–Gregory* process only involved galvanizing of steel and did not involve annealing. Be that as it may, Metaltech does not dispute that *Hanlon–Gregory* is controlling insofar as the galvanizing process is concerned and thereby in effect concedes that its galvanizing of steel alone does not constitute manufacturing for purposes of establishing a manufacturing exemption under the Act.

steel which were produced by the original steel manufacturers. We agree.

Messrs. Farmerie and Grudovich testified that the annealing phase alters the metallurgical and chemical characteristics of the full-hard cold-rolled steel thereby making the steel more malleable and amenable to forming and stamping. Metaltech argues that the result of these changes in form and quality is a new product that is adaptable to commercial applications to which the previous brittle steel could not be adapted.[11] However, Metaltech concedes that its process both begins and ends with rolls of steel. The fact that the annealed steel may be used in the manufacture of other products is of no consequence. *See School District of Philadelphia v. American Leonic Manufacturing Company*, 205 Pa.Superior Ct. 243, 209 A.2d 5 (1965).[12]

In *Stewart Honeybee Products, Inc. v. Board of Finance and Revenue*, 525 Pa. 222, 579 A.2d 872 (1990), the Supreme Court was asked to decide whether processing raw honey into pasteurized pure liquid honey is a manufacturing activity.[13] In concluding that such a process did not constitute manufacturing, the Court reasoned that the processed honey was not substantially different from the raw honey because, although

11. Grudovich testified that the annealed steel could be used to make automobiles, electrical appliances, wall studs and building panels, all of which could not be produced with full-hard cold-rolled steel.

12. In *American Leonic*, the Superior Court held that a taxpayer who produced "specialty wire" was not entitled to a manufacturing tax exemption. The court determined that although the wire produced by the taxpayer was ultimately used in the manufacture of other products, i.e., wire mesh, screens, strainers, etc...., the taxpayer itself did not make any of those finished products. The court held "[i]n brief, and at the risk of oversimplification, it may be said that the Company starts with wire and ends with wire." 205 Pa.Superior Ct. at 247, 209 A.2d at 7. We note that the wire in *American Leonic* was sometimes treated by intense heat or *annealed* in order to meet the specifications of a customer, as was done to the full-hard steel in the instant case.

13. *Stewart Honeybee* deals with taxes imposed under the Pennsylvania Capital Stock Tax Act, 72 P.S. §§ 7601–7606; however, *Golden Triangle Broadcasting, Inc. v. City of Pittsburgh*, 483 Pa. 525, 397 A.2d 1147 (1979) suggests that we may defer to other cases interpreting "manufacturing" under several other tax statutes. 483 Pa. at 528 n. 6, 397 A.2d at 1148 n. 6.

more suitable for certain uses, the processed honey remained what it was before it was treated—a sweetener. By comparison, although the steel may have been more suitable for certain uses after Metaltech's annealing process, the annealed steel remained what it was before it was treated—steel albeit less brittle. Accordingly, the trial court did not abuse its discretion by concluding that the change in the steel is superficial and not substantial so as to entitle Metaltech to a manufacturing tax exemption.

## PROCESSING

Metaltech's second reason for non-taxation is by definition. Metaltech contends that its operation is exempt under Section 6902(4) because it is engaged in "processing by-products of manufacture." In support of its proposition, Metaltech relies on the definition of "processing" contained within the Pennsylvania Capital Stock Tax Act as follows:

> The electroplating, *galvanizing*, enameling, anodizing, coloring, finishing, impregnating, or *heat treating of metals* or plastics for sale or in the process of manufacturing.

72 P.S. § 7601(a). (Emphasis added.)

Metaltech contends that since the Pennsylvania Capital Stock Tax Act specifically defines processing to include galvanizing and it is undisputed that Metaltech galvanizes steel, that the Treasurer is without the power to impose the business privilege and mercantile taxes on its operation.

Metaltech's argument assumes that it processes a by-product of manufacture by galvanizing the rolls of full-hard cold-rolled steel. Webster's Third New International Dictionary defines the term "by-product" as "a secondary or additional product: something produced in addition to the principal product." In *Harsco Corporation v. City of Pittsburgh,* 516 Pa. 562, 533 A.2d 1012 (1987), the Supreme Court held that the taxpayer was engaged in the processing of by-products of manufacture. In *Harsco,* the taxpayer took molten slag, which was a waste product discarded by a steel manufacturer, and subjected it to a process which resulted in increased concentrations of iron within certain limited portions of the

slag. The taxpayer then segregated the iron contents from the remainder of the slag and sold the reusable iron back to the steel manufacturer for reintroduction into the original steelmaking process. The Supreme Court explained the rationale for its holding in the following manner:

The facts in this case indicate that appellant's product is extracted from the *waste by-product* of the original manufacturing process. It is then returned to the manufacturing process to be used as a component in further manufacturing, either by the original manufacturer, Jones & Laughlin, or another steel manufacturer. Since the rationale behind section 2(4) is to preclude taxation on manufactured products, thereby making them more competitive in the open market, it seems inconsistent with that rationale to allow this hidden tax on material *which is derived from the original manufacturing process and returned thereto for the further purpose of manufacturing.* 516 Pa. at 568–69, 533 A.2d 1012. (Emphasis supplied).

Metaltech has failed to establish that it processes a by-product of manufacture since the rolls of steel are not something produced in addition to the principal product, but are themselves the principal product of the original manufacturers. There is no secondary or additional product as there was in *Harsco.* Accordingly, Metaltech has not proven that its operation falls within the narrow set of facts which qualify for exemption as "processing by products of manufacture" and thus is not entitled to an exemption under Section 6902(4) of the Act.

## ORDER

AND NOW, this 11th day of March, 1993, the order of the Court of Common Pleas of Allegheny County is affirmed.

Pellegrini, J., did not participate in the decision in this case.

FRIEDMAN, Judge, dissenting.

Admittedly, this is a close case; however, after careful consideration of the relevant case law and its application to the

facts presented here, I feel that Metaltech is entitled to the statutory protection from tax found in section 2(4) of the Act, 53 P.S. § 6902(4), because it is engaged in manufacturing. Therefore, I respectfully dissent.

In *Bindex Corp. v. City of Pittsburgh*, 504 Pa. 584, 475 A.2d 1320 (1984), our Supreme Court considered the term "manufacture" and determined that the concept underlying the definition of manufacture is the transformation of material or things into something different from that received. Rather than a superficial or cosmetic change which makes no real alteration in the goods, manufacture must result in a new identity for the basic materials, which is achieved through a combination of skill and labor that is easily traceable to the current producer.

The Treasurer contends that Metaltech's dual process of galvanizing and annealing raw steel does not meet this definition of manufacture because it begins and ends with the *same rolls of steel* produced by the original manufacturer without creating a new and different product. Whereas the majority agrees with this characterization, I do not. Nor do I believe that merely because the steel is in rolls both before and after undergoing Metaltech's process, that it is necessarily unchanged.

The Treasurer relied on *City of Pittsburgh v. Hanlon–Gregory Galvanizing Co.*, (No. 3132 July Term 1974, filed February 15, 1977) to uphold the tax assessment against Metaltech. *Hanlon–Gregory* held that galvanizing steel did not constitute manufacturing because it did not result in the production of a new and different article where there had been no alteration in the form, quality or adaptability of the steel. The court specifically noted that *the use for the steel had not changed in any way.* Metaltech concedes that in the hot-dip galvanizing operation used by Hanlon–Gregory, the steel merely becomes corrosion resistant and does not acquire new properties. However, Metaltech argues that *Hanlon–Gregory* does not control here because Metaltech does not merely galvanize steel but also anneals it, a process which transforms the steel into a new product with the ability to be formed and

stamped, totally unlike the full-hard cold-rolled steel from which it was derived.

The trial court rested its determination on *City of Pittsburgh v. Electric Welding Co.*, 394 Pa. 60, 145 A.2d 528 (1958), in which the Court concluded that Electric Welding's reshaping of steel rods into reinforcement products did not constitute manufacturing because the final product was the same as the original material except for *slight changes in shape, length and some minor assembly.* Here, however, Metaltech's annealing process results in an end product which is clearly distinguishable from the raw material with which it began. Whereas brittle unannealed steel is useless for the vast majority of commercial applications (R.R. at 101a), the malleable steel manufactured by Metaltech is useful for a wide range of commercial products.

In *School District of Philadelphia v. American Leonic Manufacturing Co.*, 205 Pa.Superior Ct. 243, 209 A.2d 5 (1965), cited by the majority here, the court determined that a company which produced "specialty wire" was not engaged in manufacture. The company purchased heavy wire which conformed to customer specifications and then converted it to thinner wire by drawing it through dies. Although the thinner wire was ultimately used in a variety of products, the court reasoned that the principal change made by the company was in the size of the wire, so that it had not gone through a substantial transformation in form, qualities and adaptability of use.

*American Leonic* is distinguished from this case because, unlike the wire in *American Leonic* which was altered only in dimension, the steel here undergoes a thorough transformation. The annealing process alters the metallurgical and chemical properties of the original raw material, converting it to finished steel with new qualities and uses.

The majority relies principally on *Stewart Honeybee Products, Inc. v. Commonwealth*, 525 Pa. 222, 579 A.2d 872 (1990) to support its determination. In *Stewart Honeybee*, our Supreme Court held that a taxpayer which processed raw honey and converted it into pasteurized liquid honey was not in-

volved in manufacture because the processed honey *retained its use* as a sweetener after it was treated.

The Court in *Stewart Honeybee* drew a distinction between that case and its opinion in *Ski Roundtop v. Commonwealth,* 520 Pa. 227, 553 A.2d 928 (1989), noting that in the latter case, the raw materials were substantially changed into a new material with properties and uses which it did not have prior to treatment.[1] By comparison, the qualities of the steel here, by virtue of undergoing the annealing process, were significantly transformed, and the reformulated steel which resulted was now made available for uses that would have been impossible in its original form.

Finally, I note that by precluding taxation on manufacturers, section 2(4) of the Act, 53 P.S. § 6902(4), seeks to encourage the development of industry in the Commonwealth and to make products manufactured in Pennsylvania more competitive in the open market. Therefore, I believe that where the question is close, such as in the present case, any doubts should be resolved in favor of the taxpayer. *Harsco Corp. v. City of Pittsburgh,* 516 Pa. 562, 533 A.2d 1012 (1987).

I believe that the rolls of steel with which Metaltech began are not the same rolls of steel with which it ended. Rather, the finished steel which emerged from Metaltech's "manufacturing" process was a new and different product from the original full-hard cold-rolled steel, having undergone both a physical and a functional change. Accordingly, I would reverse.

---

1. In *Ski Roundtop,* the Court determined that the process of combining water and pressurized air to produce man-made snow constituted manufacture, stating that "[t]he conclusion seems inescapable that man-made snow is substantially changed from its original materials in such a way that *the resulting material is suitable for a new and different use from the materials from which it was made." Id.* at 233, 553 A.2d at 931. (Emphasis added.)