649 A.2d 198

**HAB INDUSTRIES, INC., Appellant,**

v.

**CITY OF ALLENTOWN.**

Commonwealth Court of Pennsylvania.

Argued Sept. 19, 1994.

Decided Oct. 20, 1994.

Petition for Allowance of Appeal Discontinued Feb. 27, 1995.

152

Michael D. Shepard, for appellant.

Patricia A. Siemiontkowski, Asst. City Sol., for appellee.

Before PELLEGRINI and KELLEY, JJ., and SILVESTRI, Senior Judge.

KELLEY, Judge.

HAB Industries, Inc. (HAB) appeals from an order of the court of Common Pleas of Lehigh County (trial court) denying HAB's petition for review of the City of Allentown's imposition upon HAB of a business privilege tax for the years 1971 through 1990.

The parties herein have stipulated to the following relevant facts. *See* Reproduced Record (R.) pp. 14a–17a.

HAB is a Pennsylvania business corporation with its principal place of business located on South Albert Street, Allentown, Pennsylvania. During the years 1971 through 1990, HAB has been engaged in the business of treating unfinished cloth in a variety of ways, including bleaching, scouring, dyeing printing, bulking, napping, slitting or cutting, tentering, resinating, calendaring, gumming, adjusting stretch, curing, flame retarding, heat setting, mildew proofing, and imparting permanent press, water repellence and dimensional stability.

In the course of its business, HAB receives newly constructed fabric from a knitter, which has knitted the fabric from yarn. Newly constructed fabric as it comes from the knitter does not represent finished consumer goods. Rather, such fabric must pass through various finishing processes. HAB provides these finishing processes.

Finishing enhances the appearance of the fabric and adds to its serviceability and durability, thus increasing its value. Finishing processes have assumed great importance in the textile industry. This phase of textile finishing is undertaken by a group of middlemen called "converters."

Unfinished fabric that comes to HAB from a knitter is known as "gray goods" or "griege goods." The term "gray goods" does not imply that the fabric is gray in color. The terms "gray goods" and "griege goods" denote any unfinished fabric as it comes from the knitter.

Conversion of "gray goods" includes the various types of finishing processes performed by HAB, as well as subsequent dyeing and printing, which are also a significant part of HAB's business. Finishing may take many forms and must be adapted to the kind of fiber and yarn used in the fabric and to its intended purpose. One type of gray goods may emerge from a certain finishing process in a form suitable for making curtains while the identical gray goods put through another finishing process can be used for dress material.

HAB does not take title to the goods which it finishes. Rather, HAB usually enters into a contract with a converter to perform the finishing functions described above. The converter buys the yarn which is knitted into fabric by a knitter. The knitter in turn ships the knitted fabric to HAB so that HAB can perform the finishing functions described above. Once those functions have been performed, HAB, at the direction of its converter customer, sends the finished goods to a cutter; *i.e.*, the party that will transform the finished fabric into finished goods which can be sold to wholesalers or retailers.

In some cases, HAB contracts directly with a cutter to perform the necessary finishing functions. In such instances, no converter is involved.

On April 17, 1990, the City of Allentown, Department of Administration and Finance (Allentown) sent HAB a decision seeking payment of Allentown's business privilege taxes, related license fees, and a one percent (1%) per month penalty charges for license years 1971–72 through 1989–90, totalling $222,355.37. On May 9, 1990, HAB filed a petition for review of Allentown's decision with the trial court seeking a determination that HAB is exempt from the business privilege tax on the basis of the manufacturing exemption mandated by The

Local Tax Enabling Act[1] (LTEA) and the City of Allentown Ordinance No. 11851, Section III(c)(5).[2] In the alternative, HAB also challenged the rate at which the tax would be levied against HAB.

At a hearing held before the trial court on March 13, 1993, HAB presented the expert testimony of Professor Frank Scardino of the Philadelphia College of Textiles and Science. Professor Scardino opined that HAB's finishing processes actually transform the unfinished fabric into something new, different and useable.

The trial court found that the treatment of the unfinished cloth by HAB increased the value of the griege goods between $4.00–$8.00 per pound; that in order to perform its work, HAB must add several types of chemicals in differing amounts in specific sequence; and that it is clear that skill and labor are necessary.

However, the trial court denied HAB's petition for review based on this court's holding in *City of Reading v. 45 Noble Street, Inc.*, 50 Pa.Commonwealth Ct. 431, 413 A.2d 1153 (1980). In *City of Reading*, we held that 45 Noble Street's processing of textiles did not constitute manufacturing; therefore, the company was not entitled to the manufacturing exemption found in section 2(4) of the LTEA. 53 P.S. § 6902(4).

In addition, the trial court pointed out that the legislature included in the Tax Reform Code of 1971[3] statutory definitions of "manufacture" and "processing". Specifically, section

1. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6924.

2. Allentown's business privilege tax ordinance, Ordinance 11851, codified as Article 333.03(A), imposes a tax at the rate of one to three mills on each dollar volume of gross annual receipts for the privilege of carrying on or exercising within the City of Allentown ... any trade, business, including but not limited to financial business, profession, vocation, service, construction, communication or commercial activity. Allentown levies its business privilege tax pursuant to the authority granted by section 2 of the LTEA. *See* 53 P.S. § 6902 (delegation of taxing powers and restrictions thereon).

3. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101–10004.

201 of the code defines processing as, *inter alia*, "[t]he scouring, carbonizing, cording combing, throwing, twisting or winding of natural or synthetic fibers, or the spinning, bleaching, dyeing, printing or finishing of yarns or fabrics, when such activities are performed prior to sale to the ultimate consumer." 72 P.S. § 7201(d)(2).

Thus, the trial court concluded that HAB was not entitled to a manufacturing exemption from the imposition of Allentown's business privilege tax. The trial court concluded further that HAB is engaged in a service business and therefore is subject to the business privilege tax at a rate of three mills.

■ On appeal to this court, HAB contends that the trial court erred in determining that it was subject to Allentown's business privilege tax.[4] HAB argues that *City of Reading* is inapplicable in this case because (1) it predates our Supreme Court's decisions in *Bindex Corp. v. City of Pittsburgh*, 504 Pa. 584, 475 A.2d 1320 (1984), wherein the Supreme Court clarified the definition of "manufacturing", and *Harsco Corp. v. City of Pittsburgh*, 516 Pa. 562, 533 A.2d 1012 (1987); and (2) each case must be decided on its own facts and it is unknown what evidence, if any, was presented in *City of Reading*. HAB argues that the evidence in the present case is undisputed and shows that through its manufacturing processes and its skill and labor, it creates a new, different and useable article.

Section 2(4) of the LTEA provides as follows:

> To levy, assess and collect a tax on goods and articles manufactured in such political subdivision or on the by-products of manufacture, or on minerals, timber, natural resources and farm products produced in such political

4. Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law or whether its decision was unsupported by substantial evidence. *Metaltech v. City of Pittsburgh*, 154 Pa.Commonwealth Ct. 171, 623 A.2d 401 (1993).

Section 2(4) of the LTEA represents a limitation of a municipality's ability to tax; therefore, it must be strictly construed against the taxing authority. *Harsco Corp. v. City of Pittsburgh*, 516 Pa. 562, 533 A.2d 1012 (1987).

subdivision or on the preparation or processing thereof for use or market, or on any privilege, act or transaction related to the business of manufacturing, the product, preparation or processing of minerals, timber and natural resources, or farm products, by manufacturers, by producers and by farmers with respect to the goods, articles and products of their own manufacture, production or growth, or on any privilege, act or transaction relating to the business of processing by-products of manufacture, or on the transportation, loading, unloading or dumping or storage of such goods, articles, products or by-products; except that local authorities may levy, assess and collect taxes on the occupation, occupational privilege, per capita and earned income or net profits of natural persons engaged in the above activities whether doing business as individual proprietorship or as members of partnerships or other associations.

53 P.S. § 6902(4).

■ We believe that our previous decision in *City of Reading* is controlling and affirm the trial court. This court in *City of Reading,* guided by our Supreme Court's 1902 decision in *Commonwealth v. Keystone Laundry Co.,* 203 Pa. 289, 52 A. 326 (1902) [5], stated as follows:

The record indicates that [45 Noble Street] contracts to treat unfinished cloth, referred to as "griege", in a variety of ways, including: dyeing, autoclaving, bulking, adjusting stretch, curing, flame retarding, heat setting, mildew proofing, imparting permanent press, water repellence and dimensional stability, and changing terry cloth to velour. Although the "finished cloth" may be different from the original in color, dimension, stretch, stain, heat and water

---

**5.** In *Keystone Laundry Co.,* the court determined "that a business incorporated for the purpose of 'cleansing, bleaching, starching, and smoothing textile fabrics by the use of machinery ... and the application of skilled manual operation' was not engaged in manufacturing for purposes of exemption from a capital stock tax." *City of Reading,* 50 Pa.Commonwealth Ct. at 434–35, 413 A.2d at 1155 (quoting *Keystone Laundry,* 203 Pa. at 291, 52 A. 326).

resistance, texture and bulk, the product is cloth, not a new and different article.

\* \* \* \* \* \*

[F]inishing cloth, treating it chemically and imparting it with new physical characteristics, does not result in a new and different product.

*City of Reading,* 50 Pa.Commonwealth Ct. at 435–36, 413 A.2d at 1156.

While it is true that we do not know exactly what evidence was presented in *City of Reading,* it is clear from the above-quoted language that 45 Noble Street was in the same business of treating unfinished cloth and treated unfinished cloth or griege in the same manner as HAB does in the instant case. *See* Stipulation of Facts, R. at pp. 14a–17a. Consequently, HAB's argument that we should disregard *City of Reading* on the basis that we do not know what evidence was presented therein must fail.

HAB's contention that *City of Reading* has been rendered "bad law" based on our Supreme Court's decisions in *Bindex* and *Harsco* must also fail. In *Bindex,* the Supreme Court pointed out that there exists no statutory definition of the term manufacturing in the LTEA [6]; accordingly, the *Bindex* court analyzed the history of the judicial definition given to the term "manufacturing". *See Norris Brother v. Commonwealth,* 27 Pa. 494 (1856); *Philadelphia School District v. Parent Metal Products, Inc.,* 402 Pa. 361, 167 A.2d 257 (1961); *Philadelphia School District v. Rosenberg,* 402 Pa. 365, 167 A.2d 259 (1961). As a result, the *Bindex* court concluded as follows:

6. Although the trial court looked to the definition of the terms processing and manufacture found in the Tax Reform Code of 1971, the present case falls under the LTEA; therefore, we must consider the lack of a statutory definition in the LTEA and the court's judicial definition of manufacturing. *See City of Pittsburgh v. Tucker,* 74 Pa.Commonwealth Ct. 290, 459 A.2d 1333 (1983) (Where a statute fails to define the term "manufacturing", the question of whether a specific activity is encompassed by the term, is a question of law to be resolved by the court pursuant to the facts of the case.)

As is evident, the concept underlying the definition is the transformation of material or things into something different from that received. The difference cannot be a superficial change that does not alter or change the thing. For example, a cosmetic change performed merely to facilitate the ease of handling storing, packing or shipping the product or material does not constitute manufacturing. What is required is that the basic materials or goods be given a new identity by the current producer, one which can be easily traced to such producer. This identity must be the product of skill and labor. Skill involves education, learning, experience or knowledge one acquires in a particular business, trade or profession; while labor is the physical characteristics and methods utilized to employ one's skills. When labor is used in conjunction with skill to produce a different product than the original, one with a new identity, manufacturing has occurred.

*Bindex*, 504 Pa. at 587–88, 475 A.2d at 1322 (footnote omitted).

HAB argues that under the definition of manufacturing in *Bindex*, it clearly is entitled to a tax exemption. HAB points out that the record evidence clearly establishes that (1) HAB gives a new identity to the unfinished fabric; (2) HAB transforms unfinished fabric into finished fabric suitable for consumer use; (3) HAB actually changes the original material into a new, different and useful article; (4) the new article can easily be traced directly to HAB; and (5) the product is clearly the result of HAB's skill and labor.

This court recognizes that the *Bindex* court restated the judicial definition of manufacturing. However, it did not alter the concept underlying the definition, but instead reinforced the concept that the end product must be something new and different from that received. Therefore, we need not disregard our decision in *City of Reading*.

While the properties of the unfinished cloth received by HAB may be different from the treated cloth that leaves HAB's facilities, the fact still remains that the identity of the

end product is still cloth or fabric. As in *City of Reading,* there simply is no new and different article produced.

Likewise, the *Harsco* decision does not call for this court to disregard *City of Reading.* In *Harsco,* the Supreme Court was called upon to decide whether under the LTEA, the processing of slag generated in the steelmaking process by a business engaged in metal recovery rather than by the original manufacturer of the steel constituted a nontaxable activity. The *Harsco* court held that the taxpayer was engaged in the processing of by-products of manufacture. In the present case, HAB agrees that there is no secondary or additional product as there was in *Harsco.*

However, HAB argues that based on the Supreme Court's breakdown in *Harsco* of section 2(4) of the LTEA into five categories of manufacturing, it is clear that there are five separate, independent categories of exemptions from taxation. The Supreme Court in *Harsco* separated section 2(4), for purposes of analysis, into the following categories:[7]

The first section forbids taxes on manufactured articles, natural resources and farm products.

The second forbids taxes on the processing and preparation of those items.

The third section ... forbids taxes on 'any privilege, act or transaction related to ... the production, preparation or processing ... of farm products by farmers with respect to the ... products of their own manufacture, production or growth ...'

The fourth forbids taxes on any 'privilege, act or transaction', involved in the processing of by-products of manufacture.

The fifth forbids taxes on the transportation and storage of those items.

7.   The *Harsco* court relied upon its previous breakdown of a predecessor tax enabling statute for analysis purposes which contained the same limitation on the power of municipalities to tax. *See Crawford v. Southern Fulton School District,* 431 Pa. 325, 329, 246 A.2d 332, 334 (1968).

*Harsco,* 516 Pa. at 567, 533 A.2d at 1014 (footnote omitted) (citing *Crawford,* 431 Pa. at 329, 246 A.2d at 334).

HAB argues that it is exempt because it is involved in the processing and preparation of manufactured articles pursuant to category 2. We disagree.

■ A complete reading of section 2(4) and the *Harsco* court's breakdown thereof for analysis purposes reveals that in order to be eligible for the manufacturing exemption, there first must be an item manufactured. As found by the trial court and by this court in *City of Reading,* the chemical treatment of unfinished cloth does not result in a new and different item or product. The second category enunciated by the *Harsco* court provides an exemption for processing and preparing "those items." We believe that the phrase "those items" refers back to the manufactured items mentioned in the first category. Accordingly, since HAB does not initially prepare or process a "manufactured" item, it is not entitled to the exemption found in the second category gleaned from section 2(4) of the LTEA by the *Harsco* court.

■ Having concluded that HAB is not entitled to the manufacturing exemption from taxation found in section 2(4) of the LTEA, we must address the issue of whether the trial court properly held that HAB is subject to the business privilege tax at the service rate of three mills. Although HAB raises this issue in its statement of the questions presented in its brief, it fails to address it in the argument portion of its brief. In the absence of an argument citing relevant law, HAB has thereby waived this issue. *See Harvilla v. Delcamp,* 521 Pa. 21, 555 A.2d 763 (1989) (Issue included in appellant's statement of questions presented on appeal was nevertheless waived by appellant's failure to address issue in his appellate brief).

Accordingly, the order of trial court is affirmed.

## ORDER

NOW, this 20th day of October, 1994, the order of the Court of Common Pleas of Lehigh County, dated July 2, 1993, at No. 90–C–1325, is hereby affirmed.