475 A.2d 1320

**BINDEX CORPORATION, Appellant,**

v.

**CITY OF PITTSBURGH, Appellee.**

Supreme Court of Pennsylvania.

Argued March 6, 1984.

Decided May 25, 1984.

Carl E. Glock, Jr., Reed, Smith, Shaw & McClay, David McNeil Olds, Pittsburgh, for appellant.

D.R. Pellegrini, City Sol., Marvin A. Fein, Deputy City Sol., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

This is an appeal by Bindex Corporation (hereinafter "Bindex") from an order of the Commonwealth Court affirming the order of the Allegheny County Court of Common Pleas which instructed Bindex to pay the City of Pittsburgh, appellee, a business privilege tax for its opera-

tions as a trade bindery during the years 1976 through 1980.

The contested tax was imposed pursuant to the Local Tax Enabling Act (hereinafter "LTEA")[1] which permits local taxing authorities, such as appellee, to enact ordinances taxing "persons, transactions, occupations, privileges, subjects and personal property" within its political subdivisions. LTEA, however, prohibits local taxing authorities from levying taxes on manufacturers.[2] Therefore, the sole issue for our discussion is whether Bindex qualifies for the manufacturing exemption provided in LTEA.

■ Bindex is essentially a bookbinder. It receives from the printer the printed sheets of a proposed book. When one intends to publish a book, they must do more than print the pages. The pages must be cut from the large flat sheets of varying sizes, cut to uniformity and sequenced. The proposed pages may vary in color, weight and texture, requiring skill and labor to paste, sew, cut, fold, fasten and assemble into the proposed book. Bindex contends they make something different, new and usable from the material they receive. They contend that while they do not conceive or print the pages, arrange the typography or the layout, what they do, through skill and labor, makes what was processed into what was intended, a book. We agree.

■ Because there exists no statutory definition of the term, "manufacturing" we must look for the judicial definition given to it by our courts. A definition of the term manufacturing can be traced over a century ago to *Norris Brothers v. Commonwealth*, 27 Pa. 494 (1856), where this Court said:

1. Act of December 31, 1965, P.L. 1257, § 1, *as amended*, 53 Pa.C.S. § 6901, *et seq.*

2. Section 2, 53 Pa.C.S. § 6902 provides in pertinent part:
   "[L]ocal authorities shall not have authority by virtue of this act: * * (4) To levy, assess and collect a tax ... on any privilege, act or transaction related to the business of manufacturing, ... by manufacturers ... with respect to the goods, articles...."

[Manufacturing] does not often mean the production of a new article out of material entirely raw. It generally consists in giving new shapes, new qualities; or new combinations to matter which has already gone through some other artificial process.

In *Philadelphia School District v. Parent Metal Productions, Inc.,* 402 Pa. 361, 167 A.2d 257 (1961) we further added to the definition that "manufacturing":

... [c]onsists in the application of labor skill to material whereby the original article is changed into a new, different and useful article ... Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged ... If there is merely a superficial change in the original materials, without any substantial and well signalized transformation inform, qualities and adaptability in use, it is not a new article or new product ... (Citations omitted.)

*Id.,* 402 Pa. at 364, 167 A.2d at 258–259. Because the definition should be read in the light of its purpose of taxation, we endeavored to relieve it of excessive philosophic exegesis by stating that it is also the

"popular or practical understanding of what is manufacturing that prevails and is intended."

*Philadelphia School District v. Rosenberg,* 402 Pa. 365, 368, 167 A.2d 259, 260 (1961). As is evident, the concept underlying the definition is the transformation of material or things into something different from that received. The difference cannot be a superficial change that does not alter or change the thing. For example, a cosmetic change performed merely to facilitate the ease of handling, storing, packing or shipping the product or material does not constitute manufacturing. What is required is that the basic materials or goods be given a new identity by the current producer, one which can be easily traced to such producer. This identity must be the product of skill and labor. Skill involves education, learning, experience or knowledge one

acquires in a particular business, trade or profession; while labor is the physical characteristics and methods utilized to employ one's skills. When labor is used in conjunction with skill to produce a different product than the original, one with a new identity, manufacturing has occurred.[3]

The case of *Philadelphia School District v. Rosenberg, supra,* is illustrative and apposite. There the taxpayer was in the business of selling men's apparel. The garments and the other items which eventually made up the clothing were manufactured by others. The taxpayers designed the patterns for the finished clothing by cutting and assembling the material for sewing into a finished garment. This procedure is functionally equivalent to the cutting and folding done by Bindex. Similarly, the sewing in *Rosenberg,* which was performed by another contractor, was analogous to the ultimate binding done by Bindex. Even though the taxpayer did less than Bindex, under those facts this Court found the putative taxpayer to be a manufacturer. *Id.* at 402 Pa. 368, 167 A.2d 259.

Finally, the decisions of the lower courts that Bindex was not a manufacturer are inapposite to our decisions in *Commonwealth v. William Mann Co.,* 150 Pa. 64, 24 A. 601 (1892) and *Commonwealth v. J.B. Lippincott Co.,* 156 Pa. 513, 27 A. 10 (1893). These decisions established that the business of commercial bookbinding is manufacturing for Pennsylvania tax exemption purposes. In both cases, the issue was whether the taxpayers were organized exclusively for manufacturing so as to be exempt from a capital stock tax. In *William Mann Co., supra,* this Court said that a corporation organized to manufacture blank books and stationery was a manufacturer of these and other related products. *Id.* at 150 Pa. 70, 24 A. 601. Similarly, in *J.B. Lippincott Co., supra,* this Court in a *per curiam* affirmance held that a corporation in the business of printing and publishing periodicals and books and making sta-

---

3. *See,* Annot., *What Constitutes Manufacturing And Who Is A Manufacturer Under Tax Laws,* 17 ALR3d 7 (1968).

tionery and binding blank books to be a manufacturer wholly exempt from a capital stock tax.

As is evident from the foregoing discussion, the orders of the courts below must be reversed; and we remand this case to the Court of Common Pleas of Allegheny County for proceedings consistent with this opinion.