**TOWNSHIP OF MUHLENBERG**

v.

**CLOVER FARMS DAIRY CO.**

v.

**The CITY OF READING.**

**Clover Farms Dairy Co., Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1995.
Decided Sept. 13, 1995.

Ralph A. Mariani for appellant.

Gary R. Swavely, Jr., for appellee, Township of Muhlenberg.

Before DOYLE and SMITH, JJ., and LORD, Senior Judge.

DOYLE, Judge.

Clover Farms Dairy Company (Clover Farms) appeals an order of the Court of Common Pleas of Berks County, which granted summary judgment to the Township of Muhlenberg (Township), based on the trial court's determination that Clover Farms was not exempt from either the Township's Mercantile Tax or Business Privilege Tax, and that the Township's taxing ordinances were

not preempted by the Commonwealth's regulation of the milk industry.

The Township enacted a Mercantile Tax Ordinance, effective January 18, 1971, and on December 7, 1981, the Township enacted a Business Privilege Tax Ordinance.[1] The taxes were imposed pursuant to the Local Tax Enabling Act (Act)[2] which permits local taxing authorities to enact such ordinances. The Act, however, prohibits the levying of taxes "on any privilege, act or transaction related to the business of manufacturing ... by manufacturers ... with respect to the goods, ..." Section 2 of the Act, 53 P.S. § 6902.[3]

On June 1, 1988, the Township filed a complaint in equity in the court of common pleas, seeking a declaratory judgment that Clover Farms' production and distribution of fruit juices, fruit drinks and ice tea is not manufacturing and, therefore, is subject to the Mercantile Tax and Business Privilege Tax. In its answer, Clover Farms admitted that it produces these items, but alleged that, since it also is in the business of processing and distributing milk and milk products, its **entire** business is regulated by the Pennsylvania Milk Marketing Board (PMMB) and that the local taxes are preempted by Section 1203 of the Milk Marketing Law (Law), Act of April 28, 1937, P.L. 417, *as amended*, 31 P.S. § 700j–1203.

On March 18, 1993, Clover Farms filed a motion for summary judgment. The trial court denied Clover Farms' motion, and granted summary judgment in favor of the Township, holding that Clover Farms does

---

1. All of the Township's Ordinances have now been codified. The Mercantile Tax Ordinance is found at § 134–27 *et seq.* of the Muhlenberg Code, and the Business Privilege Tax Ordinance is located at § 134–58. The Mercantile Tax Ordinance levies a tax on businesses located within the Township based upon their volume of business. The Business Privilege Tax Ordinance imposes a licensing tax on all businesses within the Township.

    Clover Farms would be subject to both taxes if its challenges were not upheld. Clover Farms challenges both taxes because neither tax would apply if Clover Farms is found to be a manufacturer.

2. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–24.

3. The Business Privilege Tax Ordinance reiterates the prohibition on taxing manufacturers as required by the Act. The Ordinance states in part:

    *Section 4:* EXEMPTIONS:

    ....

    5) *Production and Manufacture:* No such tax shall be assessed and collected on goods, articles, and products, or on by-products of manufacture, ... or on the preparation or processing thereof, for use or market, or on any privilege, act or transaction relating to the business of manufacturing....

    (Business Privilege Tax Ordinance, Section 4(5).)

not engage in manufacturing and that the tax ordinances are not preempted by the Commonwealth's regulation of the dairy industry. Clover Farms now appeals to our court.[4]

On appeal, Clover Farms contends that it is a manufacturer, not a retailer or wholesaler, and is, therefore, exempt from the Mercantile and Business Privilege taxes. Additionally, Clover Farms argues that since it is in the dairy industry, the Township may not impose such taxes on its manufacturing because the Commonwealth's comprehensive regulations of the dairy industry preempt the local taxes.

### THE MANUFACTURING EXEMPTION

▇▇▇ The Business Privilege Tax Ordinance defines "manufacturing" as:

*SECTION 2:* DEFINITIONS

. . . .

d) *MANUFACTURE:* The process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which some new product emerges.

(Business Privilege Tax Ordinance, Section 2(d).) This definition of manufacturing is similar to the definition found in the relevant case law which, of course, applies to all local tax ordinances enacted pursuant to the au-

thority of the Local Tax Enabling Act. Our Supreme Court has held that manufacturing

[c]onsists in the application of labor skill to material whereby the original article is changed into a new, different and useful article ...[.] Whether or not an article is a manufactured product depends on whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged ...[.] *If there is merely a superficial change in the original materials, without any substantial and well signalized transformation inform, [sic] qualities and adaptability in use, it is not a new article or new product...[.]*

*Bindex Corp. v. City of Pittsburgh,* 504 Pa. 584, 587, 475 A.2d 1320, 1322 (1984) (emphasis added) (quoting *Philadelphia School District v. Parent Metal Products, Inc.,* 402 Pa. 361, 364, 167 A.2d 257, 258–59 (1961)). Whether a specific activity constitutes manufacturing is a question of law to be resolved by the courts based on the specific facts of the case. *City of Pittsburgh v. Tucker,* 74 Pa.Commonwealth Ct. 290, 459 A.2d 1333 (1983), *affirmed,* 504 Pa. 580, 475 A.2d 1318 (1984). Our courts view the term "manufacturing" narrowly, and have been reluctant to grant manufacturing exemptions in the food production areas.[5] *Kirks Milk Products,*

---

4. Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law or whether its decision was unsupported by substantial evidence. *Metaltech v. City of Pittsburgh,* 154 Pa.Commonwealth Ct. 171, 623 A.2d 401 (1991), *petition for allowance of appeal denied,* 535 Pa. 671, 634 A.2d 1118 (1993).

5. In *Commonwealth v. Weiland Packing Co.,* 292 Pa. 447, 141 A. 148 (1928), the court held that creating pickled and smoked meats, raw hide and skins, and bacon from carcasses was not manufacturing, because only a superficial change occurred since the original products were not substantially transformed into new products. Similarly, the pasteurization of milk is not manufacturing; but making cream, butter and skim milk is. *Rieck–McJunkin Dairy Co. v. Pittsburgh School District,* 362 Pa. 13, 66 A.2d 295 (1949). In *General Foods Corp. v. Pittsburgh,* 383 Pa. 244, 118 A.2d 572 (1955), the production of tapioca and decaffeinated and instant coffee was held not

to be manufacturing. Our Court in *Van Bennett Food Co., Inc. v. City of Reading,* 87 Pa.Commonwealth Ct. 30, 486 A.2d 1025 (1985), held that the preparation of potato and macaroni salad, cole slaw, pepper cabbage, pies and other food items, is not manufacturing. The processing of raw honey into pure liquid honey likewise is not manufacturing because a new and different product has not been created. *Stewart Honeybee Products, Inc. v. Board of Finance and Revenue,* 525 Pa. 222, 579 A.2d 872 (1990). Most recently in *Allied Foods v. School District,* — Pa.Cmwlth. ——, 654 A.2d 273 (1995), we held that cutting up a calf carcass into raw pieces of veal does not constitute manufacturing.

There are cases which hold that the processing of certain food items is manufacturing: *Commonwealth v. Snyder's Bakery,* 348 Pa. 308, 35 A.2d 260 (1944) (converting potatoes into potato chips); *Pillsbury Mills, Inc. v. Pittsburgh School District,* 408 Pa. 369, 184 A.2d 236 (1962) (milling wheat into flour); and *Kirks Milk* (processing buttermilk and skim milk into powdered milk).

*Inc. v. Commonwealth,* 58 Pa.Commonwealth Ct. 230, 427 A.2d 688 (1981).

In Clover Farms' view, it transforms slurry and powdered drink mixes, arguably inconsumable products, into new consumable products by applying labor, skill and sophisticated machinery to combine the slurry and powdered mix with water and sucrose to create the final products. The Township, on the other hand, argues that Clover Farms is merely adding water to a mix to create the drinks, and therefore, only superficially changing the original form of the juices.

■ As stated above, for a business to be classified as a manufacturer, it must meet two criteria: (1) skill, labor and science must be involved; and (2) a new, different and useful product must be created. *Van Bennett.*

We hold that Clover Farms is not a manufacturer because it does not produce a new, different and useful product, and affirm the judgment of the common pleas court.[6]

Clover Farms produces three different non-dairy drinks: fruit juice, fruit drinks and iced tea. To produce the fruit juices, Clover Farms purchases squeezed fruit juice, which then has its water evaporated leaving a slurry, a frozen syrup-like material. The slurry is transported to Clover Farms, where pasteurized water is added to the slurry, along with sucrose. The temperature, sugar, acid, and bacteria levels are monitored by sophisticated machines. The process for making the fruit drinks and iced tea involves the blending of pasteurized water and sucrose with powdered mixes using machines to regulate the temperature, sugar, acid and bacteria levels.

In light of the above, Clover Farms is merely adding water and sugar to evaporated juice and anhydrous drink mixes to reconstitute a product. Although the final product has more sugar and a higher water content

than the original materials, Clover Farms' process effects only a superficial change in the original materials.[7] The final product is not to be put to a use other than that which had been intended for the original ingredients; there is no other use for the juice slurry, or the powdered drink mixes, other than to create beverages.[8] Thus, since Clover Farms begins and ends with essentially the same product, *viz.,* juice and soft drinks, we hold that Clover Farms is not a manufacturer.

Clover Farms argues that because the original products are not fit for human consumption until Clover Farms adds other ingredients, it is a manufacturer. However, pasteurization and filtration, two processes for making a product safe for human consumption, have been specifically held not to constitute manufacturing. *Stewart Honeybee; Commonwealth v. Sunbeam Water Co.,* 284 Pa. 180, 130 A. 405 (1925) (water that goes through a distilling process and refinement to cleanse it from impurities, is still water after the completion of the process, and, therefore, is not manufacturing). Further, while the final products are more suitable for consumption after the original ingredients are treated, that, in itself, is not a significant change. Regarding the fruit juice, the original product is pure fruit juice, which is drinkable; it is not until it goes through the evaporation process that it becomes an inconsumable product. The powdered drink mixes can be compared to the powdered mixes one can purchase at a grocery store; they cannot be consumed until water has been added.

### THE PREEMPTION ISSUE

■ Clover Farms also argues that the local tax ordinances are preempted by the Commonwealth through the enactment of the Milk Marketing Law (Law), the Milk Mar-

---

**6.** This Court does not need to address whether skill, labor and science is involved with Clover Farms' process, because Clover Farms has failed the second prong of the *Van Bennett* test.

**7.** *Compare Ski Roundtop, Inc. v. Commonwealth,* 520 Pa. 227, 553 A.2d 928 (1989) (the transformation of water and pressurized air to snow was

manufacturing because of the snow had a completely different use than the original materials).

**8.** *Compare Kirks Milk* (buttermilk and skim milk powders have different uses than liquid milk, since the buttermilk and milk powders are used where it is unfeasible to use milk; such as, in cereals, dried foods, and candies).

keting Fee Act, Act of July 1, 1978, P.L. 730, *as amended,* 31 P.S. § 700k–1 et seq., and the Milk Producers' Security Act, Act of July 6, 1984, P.L. 652, *as amended,* 31 P.S. §§ 626.1–626.15, all of which are used in the regulation of the milk production industry by the PMMB. Clover Farms asserts that these statutes comprehensively regulate the milk industry, and since Clover Farms is in the milk industry, the Township's tax Ordinances, as they pertain to Clover Farms, are preempted.[9]

Contrary to Clover Farms' argument, there is no regulatory scheme controlling the sale and distribution of juices.[10] The purpose of the Law is to regulate the sale of milk and milk products so as to ensure that an adequate supply of milk exists and to establish a uniform economic condition for suppliers of milk. *Finucane v. Pennsylvania Milk Marketing Board,* 136 Pa.Commonwealth Ct. 272, 582 A.2d 1152 (1990). The Law was not enacted to regulate non-dairy products, except indirectly where the sale of fruit juices and drinks are sold in conjunction with milk. *Sauerbry v. Milk Marketing Board,* 82 Pa.Commonwealth 386, 475 A.2d 185 (1984).

In *Sauerbry,* Sauerbry offered to sell milk and orange drink to a school at a price below the PMMB's minimum price for milk because the price charged for the juice was lower than its value. The court held that although it was the juice prices that were below its cost, in actuality Sauerbry was selling the milk at a price below PMMB's pricing requirements and circumventing the uniform pricing scheme of the dairy industry. The PMMB was not regulating the price of the drinks, but rather safeguarding the proper and fair pricing of the milk products. *Sauerbry* does not hold, as Clover Farms argues, that the PMMB has control over juice distribution. PMMB's control over the dairy industry certainly is not so pervasive as to regulate non-dairy drinks. *Compare Allegheny Valley Bank of Pittsburgh.*

Clover Farms' final argument is that the licensing fee it pays as a milk distributor to the Commonwealth is substantial, and therefore, indicates that the intent of the legislature is for the PMMB to preempt local taxing ordinances. However, for reasons set forth above, we hold that the license fees charged to a member of the dairy industry are unrelated to the ability of the local taxing authority to impose taxes on sales of non-dairy products.

In sum, Clover Farms' business does not involve manufacturing, and the Commonwealth's regulation of the dairy industry does not preempt the local tax ordinances in question. Accordingly, Clover Farms is not entitled to an exemption from the Township's Mercantile Tax and Business Privilege Tax and the order of the trial court is affirmed.

### ORDER

NOW, September 13, 1995, the order of the Court of Common Pleas of Berks County in the above-captioned matter is hereby affirmed.

---

**9.** Pennsylvania courts to date have held that local taxing ordinances have been preempted in only three areas of business activity: banking, alcohol sales, and race track activities. *See City of Pittsburgh v. Allegheny Valley Bank,* 488 Pa. 544, 412 A.2d 1366 (1980), and *Commonwealth v. Wilsbach Distributors, Inc.,* 513 Pa. 215, 519 A.2d 397 (1986).

**10.** For preemption to exist, the Commonwealth's control over the industry must be pervasive. That is, the state must control all phases of the industry. *Wilsbach.*