## A+ Printing Inc. v. City of Altoona

C.P. of Blair County, no. 2000 GN 1688.

*Stephen D. Wicks,* for petitioner.
*Michael L. Eggert,* for respondent.

CARPENTER III, *J.,* September 11, 2000—This matter comes before the court for determination of petitioner's (A+ Printing Inc.) entitlement to an exemption from the business privilege tax imposed by the respondent, the City of Altoona, on the grounds that it is a manufacturer under 53 P.S. 6902(4). A hearing was held before the court on June 23, 2000, at which this court admitted the certified record from the Act 50 hearing. The court also heard testimony from Michael A. Colledge, president and sole owner of A+ Printing, intended to supplement the existing record. An opportunity has been afforded for briefs to be filed the last of

which was received on August 16, 2000. The matter is presently ready for our disposition.

This case began when the petitioner was assessed for a failure to file returns and pay business privilege taxes for the years 1997, 1998 and 1999. On December 16, 1999, the petitioner filed a petition for appeal of assessment of business privilege tax against the City of Altoona and the Altoona Area School District, contesting its liability for payment of the tax. On January 18, 2000, a hearing was held on the petitioner's appeal before Hearing Officer Ira Weiss, Esquire. The record of that proceeding is court exhibit no. 1. At that hearing, the petitioner presented witness testimony and documentary evidence concerning the nature of the petitioner's business operations.

On February 25, 2000, the hearing officer denied the petitioner's appeal. On or about March 24, 2000, the petitioner filed a petition for review of the hearing officer's decision with this court. A further hearing was held before this court on June 23, 2000, at which the petitioner presented additional testimony from Mr. Colledge (as indicated previously) and also introduced four documentary exhibits consisting of examples of products produced by the petitioner. All of these facts are essentially undisputed presently. The nature of the business engaged in by petitioner is also subject to agreement. The petitioner has been engaged in the business of commercial printing since 1992. It primarily produces cards, letterheads, envelopes, programs, carbon paper forms, brochures, catalogs and company annual reports. Only about five to 10 percent of petitioner's business revenues stem from production of cards, letterheads and

business envelopes. Forty to 45 percent of its revenues come from printing catalogs. The remaining 45 to 50 percent of its revenue is derived from the printing of brochures, reports, carbon forms and programs.

The printing process utilized by the petitioner involves design layout of the product, typesetting through a computer generator process, projection of film negatives from which an aluminum plate is produced, and application of ink to paper with the aluminum plate. The raw materials used by the petitioner are paper and envelopes, to which ink is applied through the above described process to produce a final product. The envelopes, which the petitioner purchases, are not altered in physical form through the petitioner's printing process. In some cases, the paper received by the petitioner is cut or folded, as well as having ink applied to it. As the reader can see, the central question before the court is whether petitioner's various treatments of paper constitute manufacturing.

The term "manufacturing" for purposes of the Local Tax Enabling Act was defined by the Supreme Court of Pennsylvania in the following terms: "[manufacturing] . . . consists in the application of labor or skill to material whereby the original article is changed into a new, different and useful article . . . . Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged . . . . If there is merely a superficial change in the original materials, without any substantial and well signalized transformation in form, qualities and adaptability in use, it is

not a new article or new production . . . ." *Philadelphia School District v. Parent Metal Products Inc.,* 402 Pa. 361, 364, 167 A.2d 257, 259 (1961); see also, *Bindex Corporation v. City of Pittsburgh,* 504 Pa. 584, 587, 475 A.2d 1320, 1322 (1984).

The question of whether a particular activity constitutes manufacturing under this definition is to be resolved on the specific facts of the particular case. The court must view the term "manufacturing" narrowly for purposes of determining whether the petitioner is entitled to an exemption from local taxation as a manufacturer. *Township of Muhlenberg v. Clover Farms Dairy Co.,* 665 A.2d 544, 546 (Pa. Commw. 1995).

The City of Altoona argues the decision of the hearing officer was correct because the original articles received by the petitioner—paper and envelopes—are not transformed in form, qualities and adaptability in use, and do not become new articles and new products. In effect, paper and envelopes come into the petitioner's business, and what leaves the business is still, essentially, paper and envelopes. Any differences are argued to be namely, superficial—ink has been applied to the product, and in some cases, the size of the paper has been changed. We disagree with this analysis and find for the petitioner.

At the outset, we concede the distinction which we are being asked to make is a difficult one. We find no particular authority which conclusively binds us. We base our decision on a fair reading of the case law combined with the reasonable inferences which appeal to our common sense and judgment. Petitioner cites to us the case of *Ohiopyle Prints v. Uniontown Area School District,*

662 A.2d 672 (Pa. Commw. 1995) as particularly instructive. The *Ohiopyle* decision discussed the transformation of paper, the specific commodity with which we are dealing in the present case as follows:

"When a newspaper is printed, paper and ink are radically transformed into a device for the communication and storage of information, opinions, and advertising. The consumer who purchases a newspaper is not merely buying paper and ink, but is purchasing a product that will provide him or her with access to information. Taxpayer's printing process on the other hand, simply converts an undecorated garment into a decorated garment, without any change in use at all." See *Ohiopyle* at 674.

We find the logic of the *Ohiopyle* decision well grounded both in law and in logic. Paper is a commodity capable of numerous uses. Indeed, those uses are so many as to be almost incapable of enumeration. What our petitioner's process accomplishes, as in *Ohiopyle* is to render all of those possible applications of paper moot except for one purpose—namely, use in a particular customer's business operations. We believe this necessarily constitutes manufacturing under the stated definition. Even construing the term "manufacturing" narrowly as we are required to do, we believe petitioner's business so closely resembles the newspaper printer it is entitled to the same exemption.

Like the newspaper publisher, the petitioner, through the application of labor, changes the original article (paper) into a new, different and useful article. The paper goes through a literal transformation in form, quality and adaptability from an original blank page so a new article

(be it business card, catalog, poster, envelope) has emerged. This change is not superficial. It is a substantial and well signalized transformation in form, quality and adaptability in use. What was a commodity useful to all is now uniquely useful only to the immediate purchaser. That distinction differentiates our situation and likens it to the production of a newspaper (unique) as opposed to respondent's attempt to liken it to circumstances found not to constitute manufacturing (*i.e.,* use of cardboard sheets to make boxes, printing of tee shirts, etc.). In those cases, which respondent cites as controlling, we see superficial change to a product that was already in essentially final form and ready for use. A shirt, for example, can be worn by the intended user no matter what logo is printed onto it or, indeed, if no logo is printed on it at all. In that very real sense, the change which a company makes in supplying a design for that shirt transforms the underlying product not at all. That is not the case, however, with an operation such as petitioner's which takes an unfinished product and adapts it (final form) to a particular customer. Whether petitioner is changing a general paper envelope which could not pass through the Postal Service to one which does for that customer, reducing a card to an advertisement for a business/individual as a business card, or changing blank paper to a business brochure or catalog he has inevitably taken a general commodity and altered its usefulness and adaptability permanently. That constitutes manufacturing as we read the definition. Accordingly, and consistent with the above, petitioner's appeal of his 1997, 1998 and 1999 business privilege taxes is granted, the decision of the hearing officer is reversed, and this appeal sustained.