## IKON OFFICE SOLUTIONS, INC. d/b/a Ikon Document Services

### v.

## CITY OF PITTSBURGH, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 2001.

Decided March 15, 2001.

Reargument Denied May 18, 2001.

Ronald H. Pferdehirt, Pittsburgh, for appellant.

David R. Cohen, Pittsburgh, for appellee.

Before DOYLE, President Judge, COLINS, Judge, and JIULIANTE, Senior Judge.

COLINS, Judge.

The City of Pittsburgh appeals the order of the Court of Common Pleas of Allegheny County sustaining Ikon Office Solutions' statutory appeal of the City Treasurer's denial of its request for refund of business privilege taxes for the tax years 1993 through 1997. Ikon contends that it is not subject to the City's business privilege tax because its activities constitute manufacturing within the meaning of Section 2(4) of The Local Tax Enabling Act (LTEA).[1]

Alco Office Systems, renamed Ikon Office Solutions, and doing business as NightRider, requested the refund of business privilege taxes for the tax years 1993 through 1997. When the requests were denied, Ikon requested a Treasurer's Hearing. The undisputed facts of this case, as found by the City Treasurer, are summarized as follows.

Ikon operates its business at a secure facility[2] where it employs 75 to 85 employees. Ikon's equipment consists of high-speed Xerox copiers, one or more of which can apply tape binding and insert tabs and colored pages; eight to ten Canon copiers, two Canon color copiers; a Xerox copier for oversized copies; a foam board mounting press; two computers for printing labels; eight binding machines; a three-hole hydraulic press; and a laminator. Ikon reproduces originals supplied by the client, essentially producing photocopies that it also binds or mounts at the client's direction.

The City Treasurer determined that all of Ikon's activities do not qualify for the exemption, but that it may exclude as manufacturing that portion of its business attributable to bound documents. Ikon filed its statutory appeal with the court of common pleas, which sustained the appeal based on its conclusion that Ikon's "document reproduction services fit squarely within the definition of manufacturing."

---

1. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6202(4).

2. Ikon primarily serves the legal community for whom it handles confidential documents.

Citing our decision in *City of Pittsburgh v. Pittsburgh Press Company*, 14 Pa.Cmwlth. 551, 322 A.2d 390 (1974), for the proposition that the printing process—i.e., the combining of ink and paper into something new through the application of labor, skill, and machinery—constitutes manufacturing, the court concluded that Ikon's photocopying activities similarly transform blank paper and toner into a new, different, and useful item.

■ On appeal, the City argues that Ikon's photocopying business does not constitute manufacturing within the meaning of the LTEA and that therefore Ikon is not entitled to a refund of business privilege taxes and not exempt from future payment of the tax. Because the City Treasurer's record was complete and the trial court did not take additional evidence, our review is of the local agency decision, and it is limited to determining whether errors of law were committed or constitutional rights were violated, and whether necessary findings of fact were supported by substantial evidence. 2 Pa.C.S. §§ 704 and 754.

■ Whether an activity is manufacturing within the meaning of the LTEA is a question of law to be determined on a case-by-case basis. *Mar–Pat Company, Inc. v. City of Allentown*, 687 A.2d 1198 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 548 Pa. 640, 694 A.2d 624 (1997). In making that determination, courts have construed the term "manufacturing" narrowly. *City of Pittsburgh v. Tucker*, 74 Pa.Cmwlth. 290, 459 A.2d 1333 (1983), *affirmed*, 504 Pa. 580, 475 A.2d 1318 (1984). The term "manufacturing" as it is used in the LTEA means the transformation of material or things into something different from that received, and the difference cannot be a superficial change; basic materials or goods must be given new identity that can easily be traced to the producer and that is the product of skill and labor. *Bindex Corporation v. City of Pittsburgh*, 504 Pa. 584, 475 A.2d 1320 (1984). Courts will construe the term in light of its purpose of taxation, giving the term its popular or practical understanding. *Tucker v. City of Pittsburgh*, 504 Pa. 580, 475 A.2d 1318 (1984).

Case law in Pennsylvania establishes that the term "manufacturing" does not include the printing of designs and text on ready-made clothing, treating unfinished cloth (i.e., including dyeing, printing, and applying chemical processes), wholesale meat processing and packing, annealing and galvanizing rolled steel, or commercial illustration. *Ohiopyle Prints v. Uniontown Area School District*, 662 A.2d 672 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 544 Pa. 639, 675 A.2d 1254 (1996); *HAB Industries, Inc. v. City of Allentown*, 168 Pa.Cmwlth. 151, 649 A.2d 198 (1994), *appeal discontinued*, 540 Pa. 607, 655 A.2d 994 (1995); *Tucker*; *City of Reading v. Forty–Five Noble Street, Inc.*, 50 Pa.Cmwlth. 431, 413 A.2d 1153 (1980). Manufacturing does include bookbinding, the processing of odd lots of cardboard into packaging (e.g., shirt and hosiery inserts, collar supports, and ribbon reel covers), and the commercial printing of newspapers. *Mar–Pat*; *Bindex*; *Pittsburgh Press*.

Our decision in *Pittsburgh Press* provides no basis for concluding that photocopying is manufacturing. The taxpayer in that case was a newspaper publisher, and although newspaper printing was conceded to be manufacturing, the City of Pittsburgh imposed its tax on the taxpayer's gross receipts from printing advertising. In ruling in the taxpayer's favor, we adopted the trial judge's opinion in which he concluded that inasmuch as the printing process that resulted in a finished newspaper constituted manufacturing, the

printing of the advertising content was manufacturing as well. The printing of a newspaper is in all respects different from Ikon's photocopying activities; furthermore, newspaper printing is manufacturing in the popular understanding of the term.

Ikon's photocopying activities create no more than a superficial change in the original materials. Its activities are more analogous to the activities found not to be manufacturing in *Ohiopyle Prints, Tucker,* and *Forty–Five Noble Street,* than they are to bookbinding and commercial newspaper printing found to be manufacturing in *Mar–Pat* and *Pittsburgh Press.* In our view, photocopying is not manufacturing in the popular and practical understanding.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 15th day of March 2001, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed.

JIULIANTE, Senior Judge, dissenting.

I respectfully disagree with the majority's conclusion that Ikon's activities do not constitute manufacturing. Although initially one might be tempted to conclude that photocopying is not manufacturing in the popular understanding of the term, one must examine the individual taxpayer's activities in reaching a determination. *See Mar–Pat* (whether an activity constitutes manufacturing under the LTEA is a question of law, to be determined on a case-by-case basis.)

Here, it is undisputed that, in addition to traditional photocopying, Ikon, *inter alia,* has the capacity to make bound copies, apply tape binding, insert tabs and colored pages, make oversized copies, print labels, laminate and mount items. Indeed, the City Treasurer determined that Ikon could exclude as manufacturing that portion of its business attributable to bound documents. The trial court went further and concluded that "photocopying involves the transformation of blank paper and toner into a new product, through the use of mechanical equipment, skill and labor, and thus constitutes manufacturing. Although Ikon reproduces a copy of an original, they transform blank paper into a new, different and useful article." (Trial Court's Opinion at 5.) I agree with the trial court and respectfully disagree with the majority that there is no case law to support the proposition that photocopying can constitute manufacturing.

In *Bindex,* the Supreme Court held that the process of binding printed pages together into a book constituted a manufacturing activity that was exempt from the City's business privilege tax. The Court reasoned that the book binder used skill and labor to give a new identity to basic materials—printed pages. For all practical purposes, I cannot distinguish the book binder's activities in *Bindex* from Ikon's creation of bound documents in the present case.

As for unbound copies, I disagree with the majority's determination that *Pittsburgh Press* provides no basis for concluding that photocopying can constitute manufacturing. In that case, this Court considered the issue of whether the advertisements appearing in newspapers were manufactured such that the gross receipts therefrom would not be subject to tax. This Court rejected the City's argument that no new or different product was produced in the printing process. We determined that an advertising layout was transformed into a totally new item in composition as compared to the initial layout. We reasoned that "[t]he Press

does not begin with an ad and end with an ad. It begins with a blueprint or design and ends with a manufactured product composed of ink and paper." *Id.*, 322 A.2d at 392. Thus, we concluded that it is the printing process itself, i.e. the combining of raw materials, ink and paper, into something new, the newspaper, through the use of labor, skill and machinery which basically makes printing manufacturing.

In addition, as the trial court noted in the present case, there is a portion of *Pittsburgh Press* that it deemed to be highly applicable to Ikon.

> Suppose that the Press were solely a job printer. It would in that case print the customer's advertisement, for example, in the form of a hand bill and return it to him for distribution. Under the circumstances, the Press would clearly be a manufacturer and the gross receipts received would certainly be gross receipts from the sale of manufactured products.

*Id.* at 393. Notwithstanding the fact that the above-quoted portion is merely a hypothetical, it is helpful to an analysis of the taxpayer's activities in the present case.

In conclusion, I believe that the majority erred in concluding that Ikon did not give something a new shape or form, a new quality or a new combination of quality or usefulness such that its activities, especially the creation of bound documents, did not constitute manufacturing. Therefore, for the above reasons, I would have affirmed the trial court's order.