### A+ PRINTING, INC. (Michael A. Colledge),

### v.

### CITY OF ALTOONA, Appellant.

Commonwealth Court of Pennsylvania.

Submitted May 8, 2001.

Decided June 6, 2001.

**770**

James A. Baxley, Pittsburgh, for appellant.

Stephen D. Wicks, Altoona, for appellee.

Before COLINS, Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

COLINS, Judge.

The City of Altoona appeals the order of the Court of Common Pleas of Blair County that reversed the City's denial of an exemption from its business privilege tax. The trial court concluded that A+ Printing is a manufacturer within the meaning of Section 2(4) of The Local Tax Enabling Act (LTEA),[1] which denies local taxing authorities the authority to levy, assess, and collect taxes on any privilege, act or transaction related to the business of manufacturing.

A+ Printing is engaged in commercial printing. Ninety to ninety-five percent of its business involves the production of catalogs, brochures, reports, carbon forms, and programs.[2] Production includes design, layout, and typography; the making of printing plates; printing onto paper, which may then be folded, cut, and bound. Five to ten percent of A+ Printing's business is the printing of cards, letterhead, and business envelopes.

The City assessed its business privilege tax against A+ Printing for the years 1997 through 1999. A+ Printing filed an appeal, requesting that it be exempt from payment of the tax as a manufacturer. After taking evidence, a hearing officer concluded that A+ Printing was not a manufacturer because it failed to show that it substantially transforms the material it receives or creates a new product. The hearing officer distinguished *Mar–Pat Company, Inc. v. City of Allentown,* 687 A.2d 1198 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 548 Pa. 640, 694 A.2d 624 (1997), and found A+ Printing's commercial printing operation to be more analogous to the imprinting of designs and wording· on ready-made clothing, which process was held not to be manufacturing in *Ohiopyle Prints v. Uniontown Area School District,* 662 A.2d 672 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied,* 544 Pa. 639, 675 A.2d 1254 (1996).

A+ Printing appealed to the court of common pleas, which took additional evi-

---

1. Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6902(4).

2. Forty to forty-five percent of its revenues come from the production of catalogs alone. (Trial Court opinion, p. 2.)

dence. A+ Printing supplemented the record with the testimony of Michael Colledge, its president and sole owner. Colledge testified as to the nature of its products and each product's proportion of its gross volume. He clarified that 40 to 45 percent of its volume consists of printing catalogs, and he detailed the various processes involved in producing a printed catalog from the photographs and written copy the customer submits. He explained the expertise involved in having the text typeset; creating the layout/design in terms of placing the text and photos or other artwork; pagination; creating photographic negatives and stripping them into page position; burning the plates from the negatives; printing using a printing press; and finally, folding, cutting trimming, and binding the printed material and wrapping it for shipment. (June 23, 2000 transcript, p. 6.) Colledge further testified that even for many of the simplest of printing jobs, his staff creates designs and logos.

Based on all of the evidence, the trial court concluded that A+ Printing is engaged in manufacturing and exempt from the business privilege tax. The court concluded that A+ Printing's business operations are most analogous to newspaper printing, which we have held to be manufacturing. In support of its conclusion, the court quoted from *Ohiopyle Prints*, in which we distinguished newspaper printing, which is exempt as manufacturing, from the transfer of a design onto ready-made garments, which is not considered to be manufacturing. The court concluded that A+ Printing, like a newspaper publisher, through the application of labor transforms its original material into a new, different, useful article.

Before Commonwealth Court, the City argues that the trial court erred in concluding that A+ Printing is engaged in manufacturing. It argues that A+ Printing's commercial printing business, which it characterizes as applying ink to paper, does not constitute a substantial transformation in form, quality, or use and therefore does not meet the legal definition of manufacturing. In support of its arguments, the City directs our attention to analogous taxing statutes that distinguish manufacturing and processing and that treat printing as processing. The City also argues that the trial court erred when it relied on dictum from *Ohiopyle Prints*.

■ Whether an activity is manufacturing within the meaning of the LTEA is a question of law to be determined on a case-by-case basis. *Mar–Pat*. In making that determination, courts have construed the term "manufacturing" narrowly. *City of Pittsburgh v. Tucker*, 74 Pa.Cmwlth. 290, 459 A.2d 1333 (1983), *affirmed*, 504 Pa. 580, 475 A.2d 1318 (1984). The term "manufacturing" as it is used in the LTEA means the transformation of material or things into something different from that received, and the difference cannot be a superficial change; basic materials or goods must be given new identity that can easily be traced to the producer and that is the product of skill and labor. *Bindex Corporation v. City of Pittsburgh*, 504 Pa. 584, 475 A.2d 1320 (1984). Courts will construe the term in light of its purpose of taxation, giving the term its popular or practical understanding. *Tucker v. City of Pittsburgh*, 504 Pa. 580, 475 A.2d 1318 (1984).

■ The term "manufacturing" does not include the reproduction of originals (i.e., photocopying), printing of designs and text on ready-made clothing, treating unfinished cloth (i.e., including dyeing, printing, and applying chemical processes), wholesale meat processing and packing, annealing and galvanizing rolled steel, or commercial illustration. *Ikon Office Solu-*

*tions, Inc. v. City of Pittsburgh,* 771 A.2d 870 (Pa.Cmwlth.2001); *Ohiopyle Prints; HAB Industries, Inc. v. City of Allentown,* 168 Pa.Cmwlth. 151, 649 A.2d 198 (1994), *appeal discontinued,* 540 Pa. 607, 655 A.2d 994 (1995); *Tucker; City of Reading v. Forty–Five Noble Street, Inc.,* 50 Pa. Cmwlth. 431, 413 A.2d 1153 (1980). Manufacturing does include bookbinding, the processing of odd lots of cardboard into packaging (e.g., shirt and hosiery inserts, collar supports, and ribbon reel covers), and the commercial printing of newspapers. *Mar–Pat; Bindex; City of Pittsburgh v. Pittsburgh Press Company,* 14 Pa.Cmwlth. 551, 322 A.2d 390 (1974).

■ In our view the evidence demonstrates indisputably that A+ Printing is engaged in manufacturing within the meaning of the LTEA because it takes basic materials and gives them new identity as bound and printed publications that can easily be traced to the producer and that is the product of its skill and labor. The trial court drew the appropriate comparison to our cases involving newspaper printing, even if perhaps it could have cited a better case to illustrate the proposition. A+ Printing's operations are analogous to the combination of the printing operations in *Pittsburgh Press* and the bindery in *Bindex.* Although the parties in *Pittsburgh Press* agreed that the taxpayer newspaper's printing activities constituted manufacturing, the "manufacture" of the ads printed in the newspaper is factually similar to print production that characterizes the bulk of A+ Printing's business. In *Pittsburgh Press,* we adopted the trial court's opinion, which in reference to business operations in question—the taxpayer's selling of advertisement—stated,

> an advertising layout is composed of typewritten copy, photos, drawings or a combination of these, depending on the kind of ad involved. This layout is fed into the Press's production department and is used as a blueprint. After numerous procedures are performed, a press plate is finally molded which is mounted on the printing presses. The resulting finished product is an ad appearing in the completed newspaper, a totally new item in composition as compared with the initial layout. Therefore, the Press does not begin with an ad and end with an ad. It begins with a blueprint or design and ends with a manufactured product, composed of ink and paper.

322 A.2d at 392.

To produce a bound product, A+ Printing must do more than print the pages. "The pages must be cut from the large flat sheets of varying sizes, [folded and] cut to uniformity, and sequenced. The proposed pages may vary in color, weight, texture, requiring skill and labor to paste, sew cut, fold, fasten and assemble into the proposed [publication]." *Bindex,* 475 A.2d at 1321. Whereas the taxpayer in *Bindex* did not conceive or print the pages, arrange the typography or layout, its skill and labor was found to have manufactured a book. In the instant case, the taxpayer combines the processes determined to be manufacturing in *Pittsburgh Press* and *Bindex,* starting with a combination of typewritten copy, photos, and/or drawings, and in exactly the same way manufactures bound publications that are more than the sum of their parts.

We decline the City's invitation to look beyond Section 2(4) of the LTEA, 53 P.S. § 6902(4), to the meanings given to the terms "manufacturing" and "processing" in the context of the Commonwealth's capital stock-franchise tax and the sales and use tax. Although those taxing statutes may respectively specifically categorize "print-

ing" as processing and manufacturing,[3] the LTEA does not. As stated above, the determination of whether an activity is manufacturing under the LTEA is determined case by case, applying the established legal definition.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 6th day of June 2001, the order of the Court of Common Pleas of Blair County in the above-captioned matter is affirmed.

---

**3.** Section 201(c)(2) of the Tax Reform Code of 1971(Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. 7201(c)(2), includes the publishing of books, newspapers, and magazines and other printing under the definition of manufacturing for purposes of the sales and use tax. Section 601(a), which pertains to the capital stock-franchise tax, distinguishes processing from manufacturing and defines "processing" to include printing and publishing. Contrary to the City's argument, were we to be influenced by another taxing statute's categorization of printing and publishing, a statute that does not distinguish processing from manufacturing would likely be more similar to LTEA.