**APPLIED TECH PRODUCTS CORP., Appellant**

v.

**RADNOR TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued June 9, 2005.

Decided July 7, 2005.

Publication Ordered Oct. 6, 2005.

Glenn S. Gitomer, Radnor, for appellant.

Jennifer W. Brown, Blue Bell, for appellee.

Stewart M. Weintraub, Philadelphia, for amicus curiae, Greater Philadelphia Chamber of Commerce and Airgas, Inc.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Applied Tech Products Corp. (Applied Tech) appeals from an order of the Court of Common Pleas of Delaware County (trial court), denying its appeal from the assessment of the business privilege tax (BPT) by Radnor Township (the Township) for the 1998–2001 tax years. We now affirm.

Applied Tech is a Delaware corporation and a member of an affiliated group of companies consisting of some twenty legal entities. The parent company of Applied Tech and the affiliated group is Applied Tech, L.L.C. Applied Tech began operating in the Township in February of 1998. No other member of the affiliated group is located within the Township. Applied Tech is a management company which pro-

vides services exclusively for the members of the affiliated group. Applied Tech essentially provides two types of services to the affiliated group, financial services and administrative/management services.

With respect to the financial services, Applied Tech facilitates financing transactions for members of the affiliated group by arranging for lines of credit and administering term loans with an outside banking group, all of which are secured by the assets of the operating companies within the affiliated group. Essentially, Applied Tech borrows the money from the bank for the benefit of the operating companies within the affiliated group, pays the interests on these loans and then is reimbursed by the operating companies.

With respect to the latter services, Applied Tech coordinates audits and accounting, tax, employee benefits and risk management. In this capacity, Applied Tech often engages and pays for the services of third parties, such as accounting firms, consultants and attorneys. When these services are directly attributable to a particular entity within the affiliated group, that entity alone reimburses Applied Tech for all expenses related thereto. However, if not directly attributable to a particular entity, then the affiliated group, by agreement, collectively reimburses Applied Tech for the acquired services.

Applied Tech does receive a management fee from the operating companies within the affiliated group. This fee covers both Applied Tech's operating expenses, which includes salaries of Applied Tech employees, rent, benefits and other costs, as well as the advanced payments to third parties for which it later receives reimbursement. Applied Tech only provides services to the companies within the affiliated group and it has never offered services to any entity outside of this group.

The Township's BPT Ordinance No. 79–31, Section 260–42, imposes the BPT on "every person engaging in a business, trade, occupation or profession in the township...." (R.R. at 1118a). Section 260–40 of the Ordinance defines "BUSINESS, TRADES, OCCUPATIONS and PROFESSIONS" as "all businesses, trades, occupations and professions in which there is offered any service or services to the general public or a limited number thereof...." (R.R. at 1114a). If the BPT applies to a taxpayer, the amount of tax is measured by that taxpayer's gross receipts and calculated at the rate of 3 mills, or 0.3% of gross receipts.

Section 260–40 of the Ordinance defines "GROSS RECEIPTS" as including "the gross amount of cash, credits or property of any kind or nature ... allocable or attributable to the township by reason of any sale made ... service rendered ... or commercial or business transactions in connection with any business, trade, occupation or profession." (R.R. at 1115a). However, certain receipts are specifically excluded from this definition. For example, Section 206(E) of the Township's BPT and Mercantile Tax Regulations (hereafter BPT Regulations) provides that "dollar-for-dollar reimbursement of out-of-pocket expenses incurred by an agent for the benefit of its principal are exempt from taxable receipts, providing that an agent/principal relationship or the reimbursement arrangement is evidenced in writing." (R.R. at 1138a).

In August of 2001, the Township, through its tax auditor Veritax and with the assistance of a subcontractor, Robert Susko, C.P.A., conducted a BPT audit of Applied Tech for the tax years 1998–2000 and estimated taxes for 2001. Following the audit, by notice dated August 30, 2001, the Township informed Applied Tech of its assessment in the amount of $151,815.37.

The Township provided Applied Tech with an audit worksheet dated August 28, 2001, detailing the amount owed as representing $122,524.22 in BPT, $12,252.42 in penalties, $16,912.83 in interest and $125.90 in occupational privilege tax.

Believing that it was not subject to the Township's BPT as it did not provide services "to the general public or a limited number thereof," Applied Tech filed an administrative appeal. The case was assigned to the Township's hearing officer. The hearing officer ultimately affirmed the assessment. Applied Tech thereafter filed a *de novo* appeal with the trial court, reiterating its argument that it did not provide services "to the general public or a limited number thereof" and, hence, was not subject to the Township's BPT. Applied Tech thereafter amended its appeal alleging that the Township was acting in a discriminatory fashion and had violated the Equal Protections clauses of the United States and Pennsylvania Constitutions by reason of its alleged agreement not to collect the BPT from similarly situated taxpayers within the Township.

Immediately prior to the start of hearings before the trial court, following receipt of certain information from Applied Tech, the Township notified the trial court by letter dated October 8, 2002, that it was amending its pre-trial statement and revising the August 28, 2001, audit worksheet. The Township attached a revised audit worksheet to this letter decreasing the amount of the assessment to $55,285.10. This decrease was the result of the Township's conclusion that the interest payments Applied Tech received from the operating companies within the affiliated group should be excluded as dollar-for-dollar reimbursements under the BPT Regulations.

The trial court bifurcated the evidentiary hearings. On October 9, October 10 and December 12, 2002, the trial court conducted hearings relative to the issues of whether Applied Tech provided services "to the general public or a limited number thereof," a condition precedent to the imposition of the BPT, and whether certain out-of-pocket expenses for which Applied Tech received reimbursement from its affiliated entities qualified for exemption from the definition of gross receipts under the BPT Ordinance and its Regulations.[1]

By decision and order dated June 27, 2003, the trial court denied Applied Tech's appeal of its assessment. The trial court concluded that Applied Tech was a business under the terms of the Township's BPT Ordinance; that it offered services to a limited number of the general public; that the amounts received by Applied Tech for management services from 1998–2000 and projected for 2001 were gross receipts subject to the BPT; and that these receipts do not qualify as dollar-for-dollar reimbursements of expenses so as to be excluded under the BPT Regulations.

These conclusions were based upon the trial court's findings that Applied Tech's management fees were based upon a budget determined by it, which was allocated to each of the operating companies within the affiliated group; that these fees were also based on the sales of the operating companies; that these fees covered Applied Tech's operating expenses and some unallocated expenses; that portions of these fees were not directly attributable to any single entity within the affiliated group and were not allocated based upon a

---

1. The trial court conducted a separate hearing relative to Applied Tech's claims of discrimination and equal protection in their amended appeal. The trial court denied relief in this regard and Applied Tech did not appeal these issues to this Court. Hence, we will not further address the same.

dollar-for-dollar reimbursement; and that the BPT Regulations specifically include among businesses subject to tax, wholly owned subsidiaries rendering services to affiliated companies.

Section 208(A) of the BPT Regulations does include as "taxable gross receipts" the "receipts from sales made to affiliated business entities." (R.R. at 1143a). This Section includes an example of a taxpayer as a wholly-owned subsidiary of its parent company, where the taxpayer performs accounting and administrative functions for the parent company. In the example, taxpayer receives a "management fee" from its parent company equal to its costs and expenses. The parent company purports to identify the same as "reimbursement." However, the example concludes that so long as taxpayer and the parent company are separate legal entities, the inter-company management fee is included as taxable gross receipts.

Applied Tech thereafter filed a notice of appeal with the trial court. The trial court issued an opinion dated February 23, 2005, in support of its decision and order. In this opinion, the trial court noted that the management services provided by Applied Tech are of the type generally subject to taxation and that Applied Tech's argument is based upon its contention that services rendered to affiliated entities do not constitute services to the general public or a limited number thereof.

Furthermore, the trial court indicated that Applied Tech's monthly management fees were based in part on the sales of the independent, though affiliated, entities in the public marketplace. As to the reimbursements, the trial court indicated that a

portion of the same covered management fees for certain unallocated expenses, not charged directly to a single entity within the affiliated group but paid by the group as a whole, and, hence, could not constitute dollar-for-dollar reimbursements excludable from its gross receipts.

 On appeal,[2] Applied Tech argues that the trial court erred in holding that it provided or offered services to the general public or a limited number thereof, thereby subjecting it to the Township's BPT. We disagree.

As noted above, Section 260–42 of the Township's BPT Ordinance imposes the BPT on "every person engaging in a business, trade, occupation or profession in the township...." (R.R. at 1118a). Section 260–40 of the Township's BPT Ordinance defines "BUSINESS, TRADES, OCCUPATIONS and PROFESSIONS" as "all businesses, trades, occupations and professions in which there is offered any service or services to the general public or a limited number thereof...." (R.R. at 1114a).

Applied Tech argues that because it offers its services only to members of the affiliated group, it does not offer "services to the general public or a limited number thereof ..." and, hence, is not subject to the BPT. However, Applied Tech's argument ignores the fact that these other members of the affiliated group are indeed members of the public and they conduct business in the public arena. Applied Tech does not and cannot dispute this fact. We agree with the Township that the above-quoted language in the Ordinance was intended to ensure that a business cannot argue that it is not a taxable busi-

---

**2.** Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law, and whether the trial court's findings are supported by substantial evi-

dence. *Township of Muhlenberg v. Clover Farms Dairy Co.,* 665 A.2d 544 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied,* 544 Pa. 677, 678 A.2d 367 (1996).

ness merely because it chooses to limit the persons or entities to whom or which it offers its services.

In addition, our Pennsylvania Supreme Court has previously held that as long as the corporation's "purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." *Shelburne Sportswear, Inc. v. Philadelphia,* 422 Pa. 199, 204, 220 A.2d 798, 800 (1966) (citation omitted); *see also City of Pittsburgh v. Dravo Corporation,* 128 Pa.Cmwlth. 380, 563 A.2d 940 (1989), *petition for allowance of appeal denied,* 525 Pa. 605, 575 A.2d 570 (1990). Applied Tech does not dispute that the activities it performs for the affiliated companies are normal business activities.

Our Supreme Court went further in *Shelburne Sportswear, Inc.,* stating as follows:

> Even though a wholly owned subsidiary is generally incorporated or acquired by the parent corporation for the purpose of advantageously carrying on some phase of the parent corporation's activities or business, the courts have been reluctant to disregard the separate legal entities ... merely to grant relief from sales, or similar taxes at the expense of the state or its subdivisions.

*Shelburne Sportswear, Inc.,* 422 Pa. at 204, 220 A.2d at 800 (citation omitted).

Furthermore, the treatment of Applied Tech as a taxable business is consistent with the Township's BPT Regulations. As noted above, Section 208(A) of these Regulations include as "taxable gross receipts" the "receipts from sales made to affiliated business entities." (R.R. at 1143a). However, more importantly, this Section includes an example of a taxpayer as a wholly-owned subsidiary of its parent company, where the taxpayer performs accounting and administrative functions for the par-

ent company. In the example, taxpayer receives a "management fee" from its parent company equal to its costs and expenses. The parent company purports to identify the same as "reimbursement." However, the example concludes that so long as taxpayer and the parent company are separate legal entities, the inter-company management fee is included in taxpayer's taxable gross receipts.

Thus, we cannot say that the trial court erred in holding that Applied Tech provided or offered services to the general public or a limited number thereof thereby subjecting it to the Township's BPT.

■ Next, Applied Tech argues that the trial court erred in holding that the monies received by Applied Tech from its affiliated entities were not excludable as dollar-for-dollar reimbursements under Section 206(E) of the BPT Regulations. Again, we disagree.

Section 260-40 of the Ordinance defines "GROSS RECEIPTS" as including "the gross amount of cash, credits or property of any kind or nature ... allocable or attributable to the township by reason of any sale made ... service rendered ... or commercial or business transactions in connection with any business, trade, occupation or profession." (R.R. at 1115a). Moreover, Section 208(A) of the BPT Regulations specifically includes as "taxable gross receipts" any management fees that are received by a subsidiary.

Nevertheless, certain receipts are specifically excluded from this definition. Section 206(E) of the Township's BPT Regulations provides that "dollar-for-dollar reimbursement of out-of-pocket expenses incurred by an agent for the benefit of its principal are exempt from taxable receipts, providing that an agent/principal relationship or the reimbursement arrangement is evidenced in writing." (R.R.

at 1138a). Section 260–50 of the Township's BPT Ordinance places the burden on the taxpayer to prove an exemption or exclusion from tax by "clear and convincing evidence." (R.R. at 1122a). We agree with the Township and the trial court that Applied Tech failed to meet its burden in this case.

Applied Tech had three sources of income from the affiliated companies, management fees, interest income and reimbursement of expenses incurred on behalf of a specific company. The Township excluded the latter two types of income as falling within the exclusion found at Section 206(E) of the Regulations, thus leaving only an issue regarding the management fees. Contrary to Applied Tech's argument, these fees are not actual reimbursements. Rather, these fees are merely a mechanism by which Applied Tech generates revenue to cover all of its expenses, including overhead and other costs.

In addition, as the Township notes in its brief to this Court, the manner in which Applied Tech determines the amount of the fees serves to characterize the same as fees for services and not fees for specific costs. More specifically, Applied Tech determines these fees at the beginning of each year and the fees are based on Applied Tech's projected budget. The fees are then apportioned among the affiliated companies based on the expected sales of the operating companies. Further, while such reimbursable items as identifiable professional fees and insurance premiums were separately invoiced, the management fees were invoiced as a flat fee, separate from these items.[3]

Moreover, in order for the Section 206(E) exclusion to apply, the expenses

incurred by Applied Tech must be reimbursed "dollar-for-dollar." However, as noted above, the evidence of record in this case reveals that the management fees charged by Applied Tech were allocated to the affiliated companies based on the relative revenues of the operating companies. Again, Applied Tech was not able to attribute these expenses to a specific operating company. As such, these fees could not be considered true reimbursement of expenses incurred by Applied Tech on behalf of the operating companies. Thus, we cannot say that the trial court erred in holding that the monies received by Applied Tech from its affiliated entities were not excludable as dollar-for dollar reimbursements under Section 206(E) of the BPT Regulations.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 7th day of July, 2005, the order of the Court of Common Pleas of Delaware County is hereby affirmed.

---

**3.** Section 208(A) of the BPT Regulations and its accompanying example, discussed in detail above, provides additional support for the

treatment of these management fees as taxable gross receipts rather than as reimbursements.